Filed 7/23/15

CERTIFIED FOR PUBLICATION

COURT OF APPEAL - FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO N., | D067445 |
| Petitioner, | (San Diego County Super. Ct. No. JCM230808) |
| v. | |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent, | |
| THE PEOPLE, | |
| Real Party in Interest. | |

Proceedings in mandate after superior court denied juvenile offender's petition for reclassification of offense from felony to misdemeanor under Proposition 47. Robert J. Trentacosta, Judge. Petition granted in part and denied in part.

Randy Mize, Chief Deputy Public Defender, Maryann Addezio Kotler, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Bonnie M. Dumanis, District Attorney, James E. Adkins and Marcella O. McLaughlin, Deputy District Attorneys, for Real Party in Interest.

Keker & Van Nest, Daniel Purcell and Chessie Thacher for Californians for Safety and Justice/Vote Safe, the American Civil Liberties Union of Northern California, the American Civil Liberties Union of Southern California, the American Civil Liberties Union of San Diego and Imperial Counties, and Michael Romano, in his capacity as director of the Stanford Three Strikes Project; Jonathan Laba for Pacific Juvenile Defender Center, as Amici Curiae on behalf of Petitioner.

Proposition 47, passed by the voters in November 2014, reclassified certain nonserious, nonviolent offenses from felonies to misdemeanors. Proposition 47 also enacted a statute (Pen. Code, § 1170.18)[1] that permits offenders to petition the superior court to redesignate their felony convictions and reduce their sentences based on the new misdemeanor classification. After the passage of Proposition 47, Alejandro N. (Alejandro) filed a section 1170.18 petition to change his juvenile felony adjudication to a misdemeanor. Ruling on the petition, the superior court agreed that Alejandro's offense now qualified as a misdemeanor for purposes of section 1170.18's *sentence reduction provisions*. Based on Welfare and Institutions Code section 726, which provides that a juvenile offender cannot be physically confined longer than an adult offender for the same offense, the court reduced Alejandro's maximum period of confinement to the misdemeanor level. However, the court declined to reclassify Alejandro's offense from a

---

[1]     Subsequent unspecified statutory references are to the Penal Code.

felony to a misdemeanor under section 1170.18's *offense reclassification provisions*, ruling that because section 1170.18 uses the adult offender terminology of "conviction," the statute does not apply to juvenile offenders.

Alejandro filed a petition for writ of mandate challenging the superior court's ruling. We issued an order to show cause, obtained briefing from the parties and various amici curiae, and heard oral arguments. In the proceedings before the superior court, the parties agreed that Alejandro's case would serve as the lead case for numerous other juvenile offenders who had filed modification petitions based on Proposition 47, and our resolution of the legal issues raised in Alejandro's petition concerning Proposition 47 would apply to the other juvenile modification petitions filed in the superior court.

We hold that the offense reclassification provisions set forth in section 1170.18 apply to juveniles. Welfare and Institutions Code section 602 provides for a minor to be declared a ward of the juvenile court when the minor commits a crime set forth in the Penal Code and other codes defining criminal offenses primarily in the adult criminal context. The section thereby incorporates the entire body of laws defining criminal offenses as the basis for juvenile wardship jurisdiction. Accordingly, when a criminal offense is reclassified from a felony to a misdemeanor in the adult context—as occurred under Proposition 47—the reclassification likewise applies in juvenile wardship proceedings. By adding section 1170.18 to the Penal Code, the Proposition 47 voters made this felony-to-misdemeanor reclassification available to qualifying offenders on a retroactive basis. Thus, section 1170.18 concerns *the very same offenses* that are incorporated into the juvenile wardship proceedings via Welfare and Institutions Code

3

section 602, and it follows that section 1170.18's offense reclassification provisions are equally applicable to juvenile offenders.

Based on the reclassification of his offense from a felony to a misdemeanor, Alejandro also requested that the superior court (1) order his DNA sample and information removed from the state's data base, and (2) reduce his fine to a misdemeanor level. We agree that a reclassified misdemeanor offense under Proposition 47 cannot alone support retention of DNA materials in the state's DNA data bank, and we shall direct the superior court to expunge Alejandro's DNA unless there is another basis to retain it apart from his mere commission of the reclassified misdemeanor offense. (Pen. Code, §§ 296, 296.1.) As to Alejandro's request for a fine reduction, he has not refuted the trial court's finding that his $50 fine was already at the misdemeanor level.

Accordingly, we grant the petition in part and direct the superior court to (1) reclassify Alejandro's felony offense as a misdemeanor, and (2) reconsider his request for DNA expungement. We deny the petition as to his request for fine reduction.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2013, the People filed a petition requesting that Alejandro be declared a ward of the juvenile court based on his committing the felony offense of commercial burglary. In April 2013, Alejandro admitted that he committed the felony offense, and the court ruled he was a ward of the court, his maximum period of confinement for the burglary was three years, and he should pay a $50 fine and provide a DNA sample for inclusion in the California Department of Justice (DOJ) DNA database.

4

Based on the November 2014 approval of Proposition 47 reducing certain offenses from felonies to misdemeanors, on November 5, 2014, Alejandro filed a modification petition in superior court stating he was currently detained in custody as a juvenile offender; his commercial burglary offense (Pen. Code, §§ 459, 460) was now a misdemeanor shoplifting offense with a maximum confinement of six months (Pen. Code, §§ 459.5, 19); and he had been confined beyond his maximum confinement term. He requested that his maximum confinement term be reduced based on the misdemeanor classification; that he be released from custody; that his offense be reclassified as a misdemeanor; that his DNA materials be removed from the DOJ database; and that his fine be reduced to an amount appropriate to a misdemeanor.

Responding to these requests, the People acknowledged that Alejandro's offense was now a misdemeanor under Proposition 47 with a six-month maximum term of confinement and that, to comport with an adult offender's maximum term as required by Welfare and Institutions Code section 726, Alejandro's maximum term should be reduced and he should be released from custody. However, the People maintained that section 1170.18 did not apply to juveniles and accordingly Alejandro, unlike an adult offender, was not entitled to have his offense reclassified as a misdemeanor. The People also opposed his requests for DNA expungement and fine reduction.

At a hearing on November 5, 2014, the superior court ruled that Alejandro's maximum term of confinement was eight months based on the new misdemeanor classification for his offense, and ordered that he be released from custody because he

5

had already been confined for 368 days.[2]  At a hearing on January 14, 2015, the court addressed his additional requests for reclassification of his offense to a misdemeanor, DNA expungement, and fine reduction.  The court denied his request that his offense be designated as a misdemeanor under section 1170.18, ruling that section 1170.18 applies to persons who have been *convicted* of the affected offenses; a juvenile wardship adjudication is not a conviction; and accordingly section 1170.18 does not apply to juvenile cases.

The court also denied Alejandro's request for DNA expungement, stating that "even if a felony is later reduced to a misdemeanor, return of DNA is not required unless one of the conditions for expungement listed in section 299 is also met," and Alejandro had not met any of these conditions.  Finally, the court denied Alejandro's request for fine reduction, stating his $50 fine was an "amount normally imposed for a misdemeanor."

DISCUSSION

Alejandro contends that section 1170.18's offense reclassification provisions were intended to apply to juvenile offenders, and any contrary interpretation violates constitutional equal protection principles.  Disagreeing with these claims, the People argue that because section 1170.18 uses the terminology of " 'conviction' " and " 'sentence' " associated with the adult criminal system, the voters did not intend that it apply to juvenile offenders, and there are no equal protection concerns because adult and

---

[2]    Alejandro's eight-month maximum confinement term was apparently based on the six-month term generally prescribed for misdemeanor offenses (Pen. Code, § 19), plus a consecutive two-month term for a previous offense he had committed.

juvenile offenders are not similarly situated or, alternatively, there is a rational basis to treat them differently.

To evaluate these contentions, we first set forth general principles applicable to juvenile wardship proceedings under the Welfare and Institutions Code, and then delineate the statutory changes made by the passage of Proposition 47.

## I. *Relevant Law*

### A. *Juvenile Wardship Principles*

Welfare and Institutions Code section 602, subdivision (a) provides that a minor may be adjudged a ward of the juvenile court "when he or she *violates any law of this state . . . defining crime . . . .*"[3] (Italics added.) Thus, pursuant to Welfare and Institutions Code section 602, laws that define criminal behavior for adults are used to define the criminal behavior that can cause a minor to be declared a ward of the juvenile court. However, the juvenile wardship system and the adult criminal system are two distinct systems; the two systems use different terminology; and their underlying purposes have a different focus. (See *In re Eric J.* (1979) 25 Cal.3d 522, 530-532; *In re A.G.* (2011) 193 Cal.App.4th 791, 804-805; *In re Myresheia W.* (1998) 61 Cal.App.4th 734, 740-741 [overall purpose of juvenile wardship focuses on rehabilitation rather than punishment].)

---

[3] Welfare and Institutions Code section 602, subdivision (a) states: "Except as provided in subdivision (b) [concerning certain aggravated crimes], any person who is under 18 years of age when he or she violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime other than an ordinance establishing a curfew based solely on age, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

For example, juvenile offenders are not defendants; their cases are handled by juvenile courts, not criminal courts; they do not plead guilty but admit the allegations of a petition; they incur adjudications of criminal acts, not criminal convictions; their cases are resolved by dispositions, not sentences; and they are confined or committed rather than imprisoned. (*In re Eric J., supra*, 25 Cal.3d at pp. 530-531; *In re Myresheia W., supra*, 61 Cal.App.4th at pp. 736-737; *People v. West* (1984) 154 Cal.App.3d 100, 107-108; Welf. & Inst. Code, § 203 [an "order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose . . . ."]; see *In re Jovan B.* (1993) 6 Cal.4th 801, 812 (*Jovan B.*).) Also, juvenile courts have broader dispositional discretion over minors than is available for adult criminal offenders under the adult determinate sentencing scheme. (*Jovan B., supra*, 6 Cal.4th at p. 809; *In re A.G., supra*, 193 Cal.App.4th at pp. 803-806.)

Notwithstanding the differences between the two systems, the essential constitutional due process protections afforded adult offenders have been extended to juvenile offenders, based on the recognition that a juvenile "alleged to have violated the criminal law . . . like an adult accused, faces both the stigma of adjudged criminality and the significant loss of liberty by confinement in a correctional institution if the allegations prove true." (*People v. Nguyen* (2009) 46 Cal.4th 1007, 1019, 1022 [although juvenile has no jury trial right, virtually all other procedural protections apply].) Further, to ensure fair treatment as between a minor and an adult offender, a minor's maximum period of physical confinement may not exceed the maximum term that could be imposed on an adult offender for the same offense. (Welf. & Inst. Code, § 726, subd. (d)(1); see

8

*In re Eric J., supra*, 25 Cal.3d at p. 532; *In re Bryant R*. (2003) 112 Cal.App.4th 1230, 1237.)

As to other matters associated with the treatment of criminal offenders, the extent to which statutes enacted in the adult context apply to juveniles depends on the particular statutory enactments under consideration.  For example, in *Jovan B.*, the court held that even though the enhancement statute at issue (for offenses committed while released on bail) used adult terminology such as " 'conviction' " and " 'sentencing' " and made no explicit reference to juveniles, the enhancement properly applied to juvenile offenders. (*Jovan B., supra*, 6 Cal.4th at pp. 811-813.)  The *Jovan B.* court reasoned the Welfare and Institutions Code statute (Welf. & Inst. Code, § 726, subd. (d)(1)) requiring that the juvenile's maximum confinement term not exceed an adult's maximum imprisonment term for the same offense includes provisions that "expressly adopt[] [the adult] system of enhancements for purposes of computing a juvenile ward's maximum confinement or commitment."  (*Jovan B., supra*, at p. 811.)  The court explained:  "Of course, juvenile proceedings do not literally result in 'convictions' and juvenile confinements are not 'sentences,' but that cannot be dispositive of the question whether the bail/O.R. enhancement applies to juvenile wards.  *Because they were enacted in an adult context, all felony sentence enhancements set forth in the [Determinate Sentencing Act] are defined in terms of 'conviction' and 'sentence' or 'punishment' for an underlying offense*. If use of this adult terminology were enough to prevent these enhancements from applying to juvenile wardship matters, . . . [the] Welfare and Institutions Code section

9

726 [provisions incorporating the enhancement system] would be meaningless."  (*Id*. at p. 812, italics added.)

Given the express intent reflected in Welfare and Institutions Code section 726 to incorporate the entire " 'system or body of laws' " set forth in the adult determinate sentencing statute (including its enhancement provisions) when calculating a juvenile's maximum confinement, the *Jovan B*. court concluded the enhancement scheme should be fully applied in juvenile proceedings, "except insofar as the focus of a particular enhancement is manifestly at odds with the principles of juvenile law." (*Jovan B., supra*, 6 Cal.4th at pp. 813, 816.)  The court then examined the concerns underlying the bail enhancement, found they were equally applicable to juvenile offenders, and held the mere use of adult procedural terminology in the bail enhancement statute did not "evidence an intent manifestly incompatible with its application to juvenile offenses" or override the express command of Welfare and Institutions Code section 726.  (*Jovan B*., at p. 813; see *In re Damien V*. (2008) 163 Cal.App.4th 16, 20, 24-26 [although alternative sentencing scheme applicable to gang-related offenses used adult "convicted" terminology, the scheme applied in juvenile cases for purposes of calculating maximum confinement; statute was ambiguous but ballot materials and statutory scheme as whole showed voters intended gang sentencing statute to apply to juveniles].)

In contrast, in *In re Derrick B*. (2006) 39 Cal.4th 535, the court concluded that a statutory provision allowing imposition of a sex offender registration requirement for statutorily-unlisted offenses based on specific findings " 'at the time of conviction or sentencing' " did not apply to juveniles.  (*Id.* at pp. 538-541, & fn. 4.)  The *Derrick B.*

10

court reasoned the terms " '[c]onviction' " and " 'sentencing' " are "terms of art usually associated with adult proceedings"; the Legislature is assumed to be aware of the well-established principle that juvenile adjudications are not criminal convictions; and absent evidence of a different legislative intent, the court would assume the use of the adult terms meant the statute was intended to be confined to adult proceedings. (*Id*. at pp. 540-541.) The court also observed that the statute at issue included a provision that expressly addressed when *adults* are required to register as sex offenders upon the commission of statutorily-listed offenses, and a distinct provision that explicitly addressed when *juveniles* are required to register upon the commission of statutorily-listed offenses. (*Id.* at pp. 542, 544, 546.) The court concluded the fact that the Legislature had "carefully distinguished . . . between the offenses requiring registration by adults and those requiring registration by juveniles" supported that the Legislature had not abandoned this differentiation in the provision addressing statutorily-unlisted offenses, but rather used the adult terminology with the intent that the latter provision apply to adult offenders only. (*Id.* at p. 546.) Distinguishing *Jovan B.*, the *Derrick B.* court explained that, unlike in *Jovan B.*, there was no relevant Welfare and Institutions Code provision that established a "broader context to expand upon the clear language chosen by the Legislature." (*Id.* at pp. 542-543.)

## B. *Proposition 47*

Proposition 47 enacted " 'the Safe Neighborhoods and Schools Act' " (the Act), effective November 5, 2014. (Notes, Deering's Ann. Pen. Code (2015 Supp.) foll. § 1170.18.) The Act changed portions of the Penal Code and Health and Safety Code to

11

reduce various drug possession and theft-related offenses from felonies (or wobblers) to misdemeanors, unless the offenses were committed by certain ineligible offenders. (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1091.)[4] Proposition 47 set forth a list of purposes concerning the Act, including to "ensure that prison spending is focused on violent and serious offenses"; "maximize alternatives for nonserious, nonviolent crime"; "invest the savings . . . into prevention and support programs"; "ensure[ ] that sentences for people convicted of dangerous crimes like rape, murder, and child molestation are not changed"; "[r]equire misdemeanors instead of felonies for nonserious, nonviolent offenses like petty theft and drug possession, unless the defendant has prior convictions for specified violent or serious crimes"; "[a]uthorize consideration of resentencing for anyone who is currently serving a sentence for any of the offenses . . . that are now misdemeanors"; and "[r]equire a thorough review of criminal history and risk assessment of any individuals before resentencing to ensure that they do not pose a risk to public safety." (Notes, Deering's, Ann. Pen. Codes, *supra*, foll. § 1170.18.) The Proposition further stated that the Act "shall be liberally construed to effectuate its purposes." (*Ibid*.)

In addition to reclassifying certain felonies as misdemeanors, Proposition 47 also added section 1170.18 to the Penal Code. Section 1170.18 provides an opportunity for qualifying offenders who incurred their felony convictions before the effective date of the

---

4      Defendants who have a prior felony conviction classified as a "super strike" (certain statutorily-specified highly serious or violent offenses) or who are required to register as sex offenders are deemed to have committed a felony even if they commit a drug or theft-related offense that is now generally classified as a misdemeanor under Proposition 47. (See *People v. Rivera, supra*, 233 Cal.App.4th at p. 1092.)

12

Act to benefit from the Act's reclassification provisions. Subdivisions (a) and (b) of section 1170.18 provide that a "person *currently serving a sentence for a conviction*" of a felony that would have been a misdemeanor under the Act can petition for resentencing based on the misdemeanor classification, and the court is required to resentence the petitioner unless he or she "would pose an unreasonable risk of danger to public safety." (Italics added.)[5] As to a person "who has *completed his or her sentence for a conviction*" of a felony, subdivisions (f), (g), and (h) of section 1170.18 provide that the person may petition the court to have the felony conviction designated as a misdemeanor.[6] (Italics

---

[5] Section 1170.18, subdivisions (a) and (b) states:
"(a) A person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing in accordance with Sections 11350, 11357, or 11377 of the Health and Safety Code, or Section 459.5, 473, 476a, 490.2, 496, or 666 of the Penal Code, as those sections have been amended or added by this act.
(b) Upon receiving a petition under subdivision (a), the court shall determine whether the petitioner satisfies the criteria in subdivision (a). If the petitioner satisfies the criteria in subdivision (a), the petitioner's felony sentence shall be recalled and the petitioner resentenced to a misdemeanor pursuant to Sections 11350, 11357, or 11377 of the Health and Safety Code, or Section 459.5, 473, 476a, 490.2, 496, or 666 of the Penal Code, [as] those sections have been amended or added by this act, unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety."

[6] Section 1170.18, subdivisions (f), (g), and (h) states:
"(f) A person who has completed his or her sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under this act had this act been in effect at the time of the offense, may file an application before the trial court that entered the judgment of conviction in his or her case to have the felony conviction or convictions designated as misdemeanors.
(g) If the application satisfies the criteria in subdivision (f), the court shall designate the felony offense or offenses as a misdemeanor.

13

added.)  The statute requires that these applications be made within three years of the Act's effective date absent a good cause showing for a later filing (§ 1170.18, subd. (j)), and provides that a felony conviction that is resentenced or designated as a misdemeanor "*shall be considered a misdemeanor for all purposes*" except with respect to firearm restrictions (§ 1170.18, subd. (k), italics added).[7]

## II.  *Analysis*

### A.  *Application of Section 1170.18 to Juveniles*

When interpreting statutory provisions enacted by voter initiative or legislative action, our primary purpose is to ascertain and effectuate the intent of the enactors. (*People v. Briceno* (2004) 34 Cal.4th 451, 459.)  To determine this intent, we consider the plain, commonsense meaning of the language used, and construe the language in the context of the overall enactment.  (*Id*. at pp. 459-460; *People v. Murphy* (2001) 25 Cal.4th 136, 142.)  When multiple statutory schemes are relevant, we evaluate each scheme and seek to harmonize them to carry out their evinced intent.  (*Murphy, supra*, at pp. 142, 157-158.)

---

(h) Unless requested by the applicant, no hearing is necessary to grant or deny an application filed under subsection (f)."

[7]     Section 1170.18, subdivision (k) states:  "Any felony conviction that is recalled and resentenced under subdivision (b) or designated as a misdemeanor under subdivision (g) shall be considered a misdemeanor for all purposes, except that such resentencing shall not permit that person to own, possess, or have in his or her custody or control any firearm or prevent his or her conviction under Chapter 2 (commencing with Section 29800) of Division 9 of Title 4 of Part 6."

Evaluating section 1170.18 in conjunction with the jurisdictional provision set forth in Welfare and Institutions Code section 602 for juvenile wardships, we conclude section 1170.18 was intended to apply to juvenile offenders.

As set forth above, Welfare and Institutions Code section 602 expressly provides that jurisdiction over juveniles who are made wards of the court is premised on the juvenile's violation of *criminal laws*. These criminal laws are contained in the Penal Code and other codes, and they define offenses primarily for purposes of *adult criminal proceedings*. Thus, when the Proposition 47 voters reclassified certain criminal offenses from felonies to misdemeanors, they necessarily reclassified these offenses for juvenile offenders by virtue of Welfare and Institutions Code section 602's correlation of wardship jurisdiction with violations of criminal laws. Indeed, there is no dispute that the Penal Code and Health and Safety Code offenses reclassified by Proposition 47 for purposes of adult criminal proceedings are likewise reclassified for purposes of juvenile wardship proceedings. That is, if a crime is classified as a misdemeanor in the adult system, it is also a misdemeanor in the juvenile system, and the same applies to felony classifications.

Proposition 47's addition of section 1170.18 to the Penal Code concerns this *very same classification of offenses*, and the statute simply extends the Act's reclassification in retroactive fashion to qualified offenders who incurred their convictions before the Act's effective date. Section 1170.18 does *not* address matters collateral to the substantive offenses that are incorporated into juvenile proceedings under Welfare and Institutions Code section 602, but rather involves *the very definition of the offenses themselves*—i.e., permitting their characterization as misdemeanors rather than felonies and allowing

15

resentencing in accordance with the misdemeanor classification. When Proposition 47 was passed by the voters, Welfare and Institutions Code section 602 had long been in existence, and it was well established that, pursuant to this provision, jurisdiction over juvenile offenders was based on the codes defining substantive criminal offenses in the adult context.

An enacting body is deemed to be aware of existing laws at the time legislation is enacted and to have enacted or amended a statute in light thereof; this principle applies as well to legislation enacted by voter initiative. (*People v. Superior Court (Cervantes)* (2014) 225 Cal.App.4th 1007, 1015 (*Cervantes*).) Thus, we presume the Proposition 47 voters were aware that under Welfare and Institutions Code section 602, criminal substantive offenses in the adult arena are used to determine when a juvenile should be declared a ward of the court, and that changes to these adult criminal offenses would effectuate corresponding changes in the substantive offenses applied in the juvenile arena. Given Welfare and Institutions Code section 602's reliance on the substantive criminal offenses promulgated in the adult context to create juvenile wardship jurisdiction, the statutory schemes as a whole reflect a clear intent to apply section 1170.18's substantive offense reclassification provisions to juvenile offenders.

Considered in its broader context, section 1170.18's use of adult criminal terminology does not reflect an intent to exclude juvenile offenders from its provisions. Section 1170.18's use of terms associated with adult criminal proceedings logically comports with the fact that the Penal Code and other codes defining crimes define the offenses primarily for use in the adult context, and that these substantive criminal offense

16

provisions are then engrafted onto the juvenile proceedings in wholesale fashion by means of Welfare and Institutions Code section 602.  In *Jovan B*., the California Supreme Court recognized that when the Welfare and Institutions Code incorporates *an entire system of laws* set forth in the Penal Code to define matters in juvenile wardships, changes made in this system of laws would generally apply in the juvenile context regardless of the use of adult criminal terminology or the timing of the amendment. (*Jovan B., supra*, 6 Cal.4th at pp. 812-813, 816.)  Here, Welfare and Institutions Code section 602's incorporation of the entire system of substantive Penal Code offenses to define juvenile wardship jurisdiction reflects an intent that Penal Code statutes effectuating a change in these substantive offenses apply in equal fashion to juvenile offenders.

This interpretation of section 1170.18, as illuminated by Welfare and Institutions Code section 602, is also consistent with Welfare and Institution Code section 726's requirement that a juvenile's maximum physical term of confinement not exceed the maximum sentence that could be imposed on an adult offender who commits the same offense.  The trial court recognized that Welfare and Institutions Code section 726 mandated that Alejandro's maximum confinement term be reduced to the misdemeanor sentencing level given that his offense was now classified as a misdemeanor for adult offenders and he qualified for the reclassification.  If Alejandro is denied the substantive-offense reclassification allowed under section 1170.18, he is deemed to have committed a felony, but he can only be confined as if he had committed a misdemeanor.  Also, although he cannot exceed an adult's confinement term for the same offense, for that very

17

same offense he will have a felony on his record whereas an adult will have only a misdemeanor. This result creates incongruities that serve no logical purpose.

The People raise numerous arguments to support the position that section 1170.18 should not be interpreted to apply to juvenile offenders, including, for example, that Proposition 47 focuses on reducing prison costs and juveniles are not sent to prison, and the impact of a juvenile felony adjudication is mitigated by the confidentiality of juvenile records. Alejandro and amici curiae raise numerous arguments to support a contrary interpretation, including that reduction in prison costs is only one purpose of the Act, and a juvenile felony adjudication can create harsher outcomes in subsequent juvenile, criminal or immigration proceedings, and can seriously impact employment, military, and college admission opportunities, which is contrary to the rehabilitative purpose of the juvenile system. We need not delve into the merits of these various arguments, nor need we address the parties' differing views on the constitutional equal protection issue. As we explained, it is clear from the plain language of Welfare and Institutions Code section 602 that changes effectuated in the substantive offenses defined by the Penal Code apply to juvenile wardships, and because section 1170.18 directly involves changes to these substantive offenses, it likewise applies to juvenile offenders. The People have not presented any considerations that override this voter and legislative intent reflected in the relevant statutory schemes.

Section 1170.18 authorizes a reduction in an offender's sentence if (1) the offender qualifies for misdemeanor reclassification (i.e., he or she has no "super strikes" and is not required to register as a sex offender), and (2) the offender does not pose an unreasonable

18

risk of danger to public safety.  (See fns. 4 & 5, *ante*.)  When finding that Alejandro was entitled to a reduction in his maximum confinement period from the felony level to the misdemeanor level and to be released from custody, the court necessarily found that Alejandro met these requirements for misdemeanor treatment of his offense. Accordingly, Alejandro is also entitled to have his juvenile adjudication redesignated as a misdemeanor.

## B.  *DNA Expungement*

The Penal Code authorizes collection of a DNA sample under a variety of circumstances, including when a person incurs a felony conviction or felony juvenile adjudication; however, it does not authorize the collection based solely on the commission of a misdemeanor.  (§§ 296, 296.1.)  Nevertheless, the trial court ruled that reduction of an offense from a felony to a misdemeanor under Proposition 47 did not provide a basis for DNA expungement because the misdemeanor reclassification did not fall within the expungement categories set forth in section 299.  We disagree.

As noted, Proposition 47 made its misdemeanor reclassification benefit available to eligible offenders on a retroactive basis by adding section 1170.18 to the Penal Code. Section 1170.18, subdivision (k) expressly addresses the impact of an offender's successful reclassification of his or her felony offense to a misdemeanor, stating:  "Any felony conviction that is recalled and resentenced . . . or designated as a misdemeanor . . . *shall be considered a misdemeanor for all purposes, except that* such resentencing shall not permit that person to own, possess, or have in his or her custody or

19

control any firearm or prevent his or her conviction under [the firearm restriction statutes]." (Italics added; see fn. 7, *ante*.)

The plain language of section 1170.18, subdivision (k) reflects the voters intended the redesignated misdemeanor offense should be treated exactly like any other misdemeanor offense, except for firearm restrictions. Because the statute explicitly addresses what, if any, exceptions should be afforded to the otherwise all-encompassing misdemeanor treatment of the offense, and because only the firearm restriction was included as an exception, the enactors effectively directed the courts not to carve out other exceptions to the misdemeanor treatment of the reclassified offense absent some reasoned statutory or constitutional basis for doing so.[8]

At the time they enacted section 1170.18, the voters were presumed to have known of the existing statute authorizing DNA collection for felony, but not misdemeanor, offenders (see *Cervantes, supra*, 225 Cal.App.4th at p. 1015), and yet they did not include DNA collection as an exception to the misdemeanor treatment of the offense. Thus, absent an intervening enactment providing otherwise, future offenders who commit a Proposition 47 reclassified misdemeanor offense will not be subject to DNA collection based solely on that offense. The fact that the voters chose to extend the

---

[8]     We note that in *People v. Rivera, supra*, 233 Cal.App.4th 1085, the court concluded an appeal involving an offense that was charged and convicted as a felony and then reclassified as a misdemeanor under Proposition 47 was properly brought to the Court of Appeal (which has jurisdiction over felony cases) rather than to the superior court's appellate division (which has jurisdiction over misdemeanor cases). (*Rivera*, at pp. 1093-1097.) Unlike the circumstances here, this conclusion was supported by the governing statutes and rules that define the meaning of felony cases for purposes of appellate jurisdiction. (See *id*. at pp. 1095-1097.)

benefits of Proposition 47 on a broad retroactive basis to persons convicted of felonies before the Act's effective date—allowing them to petition to reclassify their offenses and reduce their sentences—supports that the voters likewise intended to provide retroactive relief with regard to retention of already-secured DNA samples. Based on the broad mandate set forth in section 1170.18, subdivision (k) to treat reclassified offenses as misdemeanors for all purposes except for firearm restrictions, as well as the extension of an expansive retroactive remedy under section 1170.18, we conclude the voters did not intend that a reclassified misdemeanor offense be deemed a felony for purposes of retention of DNA samples.

The fact that reclassification of a felony to a misdemeanor is not among the grounds listed in section 299 for DNA expungement does not convince us the remedy is unavailable for Proposition 47 reclassified misdemeanor offenses. Section 299 provides for DNA expungement when a person "*has no past or present offense or pending charge which qualifies* that person for inclusion within" the DNA databank, and then lists several circumstances that provide the basis for an expungement request. (§ 299, subds. (a), (b), italics added.)[9] The grounds for expungement listed in section 299 concern

---

9    Section 299, subdivisions (a) and (b) states:
"(a) A person whose DNA profile has been included in the data bank pursuant to this chapter *shall have his or her DNA specimen and sample destroyed and searchable database profile expunged* from the data bank program pursuant to the procedures set forth in subdivision (b) if the person has *no past or present offense or pending charge which qualifies that person for inclusion* within the state's DNA and Forensic Identification Database and Data Bank Program and there otherwise is no legal basis for retaining the specimen or sample or searchable profile.

circumstances where an alleged offender is charged with an offense that qualifies for DNA collection, and then the case is not pursued or is dismissed, or the alleged offender is found not guilty or innocent. (See fn. 9, *ante*.) In these circumstances, the charged offense retains its qualification for DNA collection, but expungement of the DNA is warranted because the particular defendant is not guilty of that offense. In contrast here, under Proposition 47 *the reclassified misdemeanor offense itself no longer qualifies as an offense permitting DNA collection*. This circumstance is outside the matters contemplated by the Penal Code DNA expungement statute. There is nothing in section 299 that obviates section 1170.18's broad directive that, except for firearm restrictions, redesignated offenses are misdemeanors for all purposes, and they are therefore disqualified for DNA sample retention. (See, e.g., *In re Nancy C*. (2005) 133 Cal.App.4th 508, 510-512 [juvenile court's erroneous failure to designate offense as misdemeanor or felony at time of adjudication as required by Welfare and Institutions

---

(b) Pursuant to subdivision (a), *a person who has no past or present qualifying offense*, and for whom there otherwise is no legal basis for retaining the specimen or sample or searchable profile, *may make a written request to have his or her specimen and sample destroyed and searchable database profile expunged from the data bank program if*:

(1) Following arrest, no accusatory pleading has been filed within the applicable period allowed by law charging the person with a qualifying offense as set forth in subdivision (a) of Section 296 or if the charges which served as the basis for including the DNA profile in the state's DNA Database and Data Bank Identification Program have been dismissed prior to adjudication by a trier of fact;

(2) The underlying conviction or disposition serving as the basis for including the DNA profile has been reversed and the case dismissed;

(3) The person has been found factually innocent of the underlying offense pursuant to Section 851.8, or Section 781.5 of the Welfare and Institutions Code; or

(4) The defendant has been found not guilty or the defendant has been acquitted of the underlying offense." (Italics added.)

22

Code section 702 allows minor to seek DNA expungement should trial court designate offense as misdemeanor upon remand].)

The People's citation to *Coffey v. Superior Court* (2005) 129 Cal.App.4th 809 (*Coffey*) does not support a contrary conclusion. In *Coffey*, the defendant was charged with a wobbler offense that could be treated as a felony or a misdemeanor; the defendant pled guilty to a felony; and at sentencing the trial court reduced the offense to a misdemeanor. (*Id.* at pp. 812-813.) However, the trial court refused to order expungement of the DNA collected at the time of the defendant's plea to the felony, and the appellate court concluded the denial of the expungement request was correct. (*Id.* at pp. 812-813, 823.) *Coffey* noted that section 17, subdivision (b) provides that a wobbler that is treated as a misdemeanor at sentencing " 'is a misdemeanor for all purposes,' " but concluded this provision did not apply to the DNA expungement request at issue before the court. (*Coffee*, at pp. 818, fn. 7, 821, 823.) *Coffey* explained the Legislature had expressly stated in the DNA expungement statute (§ 299, subd. (f)[10]) that "a defendant whose sentence is reduced to a misdemeanor under section 17, subdivision (b), *must provide DNA samples . . . .*" (*Coffey*, at pp. 821, 823; see generally *People v. Park* (2013) 56 Cal.4th 782, 793-795 [wobbler reduced from felony to misdemeanor is

---

10     Section 299, subdivision (f) states: "*Notwithstanding any other provision of law, including Section[ ] 17 . . . , a judge is not authorized to relieve a person of the separate administrative duty to provide specimens*, samples, or print impressions required by this chapter if a person has been found guilty or was adjudicated a ward of the court by a trier of fact of a qualifying offense as defined in subdivision (a) of Section 296 . . . ." (Italics added.)

misdemeanor for all purposes, except when Legislature has enacted statute providing that it be treated as felony for specified purpose].)

Unlike the circumstances in *Coffey*, there is no statutory provision reflecting a Legislative or voter determination that a DNA sample should be retained for an offender whose offense has been designated a misdemeanor under Proposition 47. Absent express legislative or voter direction on this matter, we decline to judicially create a DNA retention exception here, particularly since—distinct from wobbler offenses—the offenses now classified as misdemeanors for qualifying offenders under Proposition 47 have permanently been removed from the felony category and are no longer subject to DNA collection.

Alejandro requests that we direct the superior court to order removal of his DNA sample. On this record, we cannot determine whether there is another statutory basis to retain Alejandro's DNA apart from his Proposition 47 reclassified misdemeanor offense. Accordingly, we shall direct the superior court to reconsider his expungement request and make this determination.

## C. *Fine*

Alejandro contends the $50 fine ordered by the court at the time of his felony adjudication should be reduced to a misdemeanor level amount. Rejecting his request, the trial court stated the $50 fine was appropriate for a misdemeanor. Welfare and Institutions Code section 730.6 requires that the court impose a restitution fine between $100 and $1,000 if the juvenile's offense is a felony, or a restitution fine of not more than $100 if the juvenile's offense is a misdemeanor. (Welf. & Inst. Code, § 730.6, subd.

24

(b)(1), (2).) The $50 fine was within the misdemeanor level prescribed by statute, and Alejandro has presented no argument to show an abuse of discretion by the trial court concerning this matter. We deny his request for relief concerning the fine.

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate the portions of its January 14, 2015 order that ruled on Alejandro's requests for offense reclassification and DNA expungement. The superior court shall issue a new order changing Alejandro's commercial burglary felony offense (§§ 459, 460) to a misdemeanor shoplifting offense (§ 459.5). The superior court is also directed to reconsider Alejandro's request for removal of his DNA sample from the state database and to order removal unless there is another statutory basis for retention of the DNA apart from the reclassified misdemeanor offense alone.

The petition for writ of mandate is denied as to Alejandro's request that the superior court be ordered to reduce his fine.

HALLER, J.

WE CONCUR:

HUFFMAN, Acting P. J.

NARES, J.

25