Filed 1/13/17 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

| | |
|---|---|
| In re E.G., a Person Coming Under the Juvenile Court Law. | A146287 |
| | (Contra Costa County Super. Ct. No. J13-00091) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>E.G.,<br><br>    Defendant and Appellant. | **ORDER MODIFYING OPINION AND DENYING REHEARING**<br><br>**[NO CHANGE IN JUDGMENT]** |

THE COURT:

It is ordered that the opinion filed December 14, 2016 be modified as follows:

(1) Insert the following footnote on page 13 at the conclusion of the first full paragraph: "In a petition for rehearing, the People argue section 17(b)(3) is manifestly at odds with the principles of juvenile law because there is no provision in juvenile court law for suspending the imposition of sentence. As we have explained, the relevant inquiry is not whether the criminal statute's procedure is present in juvenile court law, but rather whether the statute's "internal references to adult criminal procedures *indicate a purpose* manifestly inconsistent with juvenile application." (*Jovan B., supra,* 6 Cal.4th at p. 813, italics added.) The petition identifies no reason our analysis on this question is incorrect. The People next argue even if section 17(b)(3) does apply in juvenile proceedings, it does not apply to appellant because he was not granted probation without the imposition of sentence or any other stayed or suspended disposition. However, the appropriate analysis looks to the "functional equivalent" of the adult criminal procedure in juvenile court law. (*Jovan B.,* at p. 815.) The petition does not address our analysis concluding appellant's disposition was the functional equivalent of a grant of probation without imposition of sentence. Finally, the People argue appellant had other remedies to mitigate the impact of his felony adjudication. Assuming these remedies are equivalent to a reduction under section 17(b)(3), the People fail to explain how their availability impacts our statutory interpretation analysis of the application of section 17(b)(3) in juvenile proceedings."

1

There is no change in the judgment.

The People's petition for rehearing is denied.


Dated: _____          _____, P.J.

Superior Court of Contra Costa County, No. J13-00091, Hon. John Minney, Judge.

James S. Donnelly, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Donna M. Provenzano and Christina Vom Saal, Deputy Attorneys General, for Plaintiff and Respondent.

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| In re E.G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, Plaintiff and Respondent, v. E.G., Defendant and Appellant. | A146287 (Contra Costa County Super. Ct. No. J13-00091) |


The juvenile court denied a motion by appellant, E.G., to reduce his battery offense from a felony to a misdemeanor pursuant to Penal Code section 17, subdivision (b)(3) (hereafter, section 17(b)(3)), concluding the provision does not apply in juvenile proceedings.[1] Section 17(b)(3) provides that a "wobbler" offense[2] is a misdemeanor when "the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor." We conclude this provision applies in juvenile proceedings, and remand to allow the juvenile court to exercise its discretion under section 17(b)(3).

---

[1] All undesignated section references are to the Penal Code.

[2] "Wobblers" are offenses that "are chargeable or, in the discretion of the court, punishable as either a felony *or* a misdemeanor." (*People v. Park* (2013) 56 Cal.4th 782, 789 (*Park*).)


1

BACKGROUND

In 2013, an amended petition filed pursuant to Welfare and Institutions Code section 602 alleged appellant committed four offenses.[3] Appellant pled no contest to two of them—battery causing serious bodily injury (§ 243, subd. (d)) and grand theft from the person (§ 487, subd. (c))—and the remaining two were dismissed on the prosecutor's motion. The offenses appellant pled no contest to were wobblers, and the amended petition alleged them as felonies.

At the dispositional hearing, the juvenile court declared appellant a ward of the court, placed him on probation, and committed him to the Orin Allen Youth Rehabilitation Facility for nine months. Appellant appealed, and this court concluded the record did not demonstrate the juvenile court exercised its discretion to declare the offenses misdemeanors or felonies as required by Welfare and Institutions Code section 702. (*In re E.G.* (Nov. 8, 2013, No. A138253) [nonpub. opn.].) We remanded for the court to exercise this discretion and otherwise affirmed. (*Id.*) The remittitur issued in January 2014.[4]

In July 2015, appellant made a motion before a different bench officer to have his offenses reduced to misdemeanors under section 17, subdivision (b), arguing his conduct on probation demonstrated he was rehabilitated.[5] Appellant's counsel stated that the juvenile court had already declared the offenses to be felonies and the People did not dispute this statement, although the record on appeal does not indicate this declaration was made following our remand. The juvenile court denied the motion on the ground that section 17(b)(3) did not apply in juvenile proceedings.

---

[3] The underlying facts are not relevant to this appeal.

[4] A separate appeal challenged the juvenile court's restitution order. (*In re E.G.* (Apr. 8, 2014, A138210) [nonpub. opn.].)

[5] Following this motion but before the court's ruling, the grand theft offense was reduced to a misdemeanor pursuant to Proposition 47 (§ 1170.18).

The court also stated no declaration as to the classification of the offense had been made as required by this court's opinion, and directed the parties to schedule a hearing before the bench officer who presided over the disposition hearing. In August 2015, that bench officer stated he had already declared the offenses to be felonies at disposition and did so again.[6] The juvenile court then terminated appellant's wardship and probation.

DISCUSSION

Section 17(b)(3) provides a wobbler offense is a misdemeanor "[w]hen the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor."[7] The parties dispute whether this provision applies solely in adult criminal cases, or whether it also applies in juvenile proceedings.

"When interpreting statutory provisions enacted by voter initiative or legislative action, our primary purpose is to ascertain and effectuate the intent of the enactors.

---

[6] The parties do not treat this ruling as an indication that the juvenile court would decline to reduce appellant's offense to a misdemeanor based on his post-disposition motion, if it believed it had the authority to do so pursuant to section 17(b)(3).

[7] Section 17, subdivision (b) provides, in its entirety: "When a crime is punishable, in the discretion of the court, either by imprisonment in the state prison or imprisonment in a county jail under the provisions of subdivision (h) of Section 1170, or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances: [¶] (1) After a judgment imposing a punishment other than imprisonment in the state prison or imprisonment in a county jail under the provisions of subdivision (h) of Section 1170. [¶] (2) When the court, upon committing the defendant to the Division of Juvenile Justice, designates the offense to be a misdemeanor. [¶] (3) When the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor. [¶] (4) When the prosecuting attorney files in a court having jurisdiction over misdemeanor offenses a complaint specifying that the offense is a misdemeanor, unless the defendant at the time of his or her arraignment or plea objects to the offense being made a misdemeanor, in which event the complaint shall be amended to charge the felony and the case shall proceed on the felony complaint. [¶] (5) When, at or before the preliminary examination or prior to filing an order pursuant to Section 872, the magistrate determines that the offense is a misdemeanor, in which event the case shall proceed as if the defendant had been arraigned on a misdemeanor complaint."

3

[Citation.] To determine this intent, we consider the plain, commonsense meaning of the language used, and construe the language in the context of the overall enactment. [Citations.] When multiple statutory schemes are relevant, we evaluate each scheme and seek to harmonize them to carry out their evinced intent." (*Alejandro N. v. Superior Court* (2015) 238 Cal.App.4th 1209, 1223–1224 (*Alejandro N.*).)

Section 17(b)(3) uses language that is generally not applicable to juvenile proceedings–specifically, "defendant" and "sentence." "[J]uvenile offenders are not defendants" and "their cases are resolved by dispositions, not sentences." (*Alejandro N., supra,* 238 Cal.App.4th at p. 1219; see generally Welf. & Inst. Code, § 203 ["An order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding."].) However, our Supreme Court has directed that the presence of such language in a criminal statute "cannot be dispositive of the question whether the [criminal statute] applies to juvenile wards." (*In re Jovan B.* (1993) 6 Cal.4th 801, 812 (*Jovan B.*) [holding criminal statute using terms "convictions" and "sentences" applies in juvenile proceedings].) Instead, courts must look, if applicable, to the "broader context to expand upon the clear language chosen by the Legislature." (*In re Derrick B.* (2006) 39 Cal.4th 535, 543 (*Derrick B.*) [distinguishing *Jovan B.* because no such broader context was present]; accord, *Alejandro N.,* at p. 1225 ["Considered in its broader context, [criminal statute's] use of adult criminal terminology does not reflect an intent to exclude juvenile offenders from its provisions."].)

*Jovan B.* and *Alejandro N.* are instructive. In *Jovan B.*, the criminal statute at issue was an enhancement applicable when a defendant is " 'released from custody on bail or on his or her own recognizance [(O.R.)]' " pending felony charges, commits a second felony, and is subsequently " 'convicted' " of both offenses. (*Jovan B., supra,* 6 Cal.4th at p. 808, fn. 3 [quoting § 12022.1].) The Supreme Court considered the statutory language in the broader context of Welfare and Institutions Code section 726, which provides juvenile court commitment orders "must specify that [the minor] 'may not be held . . . for a period in excess of the maximum term of imprisonment which could be

4

imposed upon an adult convicted of the offense,' " and defined " 'maximum term of imprisonment,' " for a felony offense, as "the longest adult term for that offense, as described in Penal Code section 1170, subdivision (a)(2), 'plus enhancements which must be proven if pled.' " (*Id.* at p. 810 [quoting Welf. & Inst. Code, § 726].)  The court concluded: "If [the statute's] use of this adult terminology [i.e., " 'convictions' " and " 'sentences' "] were enough to prevent these enhancements from applying to juvenile wardship matters, [the quoted language] of Welfare and Institutions Code section 726 would be meaningless." (*Id.* at p. 812.)  Instead, "the 'maximum term of imprisonment' described in Welfare and Institutions Code section 726 incorporates, to the extent therein indicated, the 'system or body of laws' known as the DSA [Determinate Sentencing Act]." (*Id.* at p. 816.)

The court continued: "Welfare and Institutions Code section 726 obviously intends that, for purposes of calculating a juvenile ward's maximum confinement or commitment, the DSA's enhancement scheme should be applied fully except insofar as the focus of a particular enhancement is manifestly at odds with the principles of juvenile law.  This requires a close analysis of each disputed enhancement to determine whether its internal references to adult criminal procedures indicate a purpose manifestly inconsistent with juvenile application." (*Jovan B., supra,* 6 Cal.4th at p. 813.)  The purposes of the on bail enhancement—" ' " ' to meet public concern over offenders who are *arrested* [and] then allowed back on the street a short time later to commit more crimes,' " ' ' "to deter the commission of new felonies by persons *released from custody* on an earlier felony," ' and to recognize such an offender's ' "*breach* of the terms of his *special custodial status*" ' "—"apply equally to juvenile and adult offenses." (*Ibid.*)  The Supreme Court concluded the criminal enhancement's "use of adult procedural terms such as 'conviction' does not evidence an intent manifestly incompatible with its application to juvenile offenses." (*Ibid.*)

The court proceeded to construe the adult procedural terms in the juvenile context. Although "a juvenile is not entitled to bail, and is never released on his 'own' recognizance, as specified in . . . section 12022.1, but rather is freed, if at all, to the

custody of a parent or guardian," the court concluded that "for purposes of Welfare and Institutions Code section 726 and . . . section 12022.1, the minor's pretrial 'house arrest' release in this case was the functional equivalent of O.R. release in an adult proceeding." (*Jovan B., supra,* 6 Cal.4th at pp. 814–815.) "Like adult O.R. release, . . . a juvenile's conditional 'home supervision' release places substantial responsibility, faith, and trust in the released person himself. . . . [H]is defiant commission of a new felony while released on this 'special custodial status' is a *personal* breach of the juvenile court's trust. It is exactly the kind of opportunistic recidivism which warrants enhanced punishment under section . . . 12022.1. We conclude that by committing a new felony while subject to 'house arrest' release on an earlier charge, the minor brought himself within the terms of the bail/O.R. enhancement." (*Id.* at p. 815.)

*Alejandro N.* considered whether section 1170.18 applied in juvenile proceedings. This statute, enacted in 2014 as part of the Safe Neighborhoods and Schools Act (Proposition 47), provides that persons already convicted of a felony offense now reclassified as a misdemeanor by other provisions of Proposition 47 may petition the court to have the conviction redesignated as a misdemeanor. (*Alejandro N., supra,* 238 Cal.App.4th at pp. 1222–1223.) Like the statute in *Jovan B.,* section 1170.18 uses adult criminal terms, but *Alejandro N.* did not find the language dispositive. (*Alejandro N.,* at p. 1125 ["Considered in its broader context, section 1170.18's use of adult criminal terminology does not reflect an intent to exclude juvenile offenders from its provisions."].) Instead, the court considered section 1170.18 in the context of Welfare and Institutions Code section 602, which "provides that a minor may be adjudged a ward of the juvenile court 'when he or she *violates any law of this state . . . defining crime.*' " (*Alejandro N.,* at p. 1219 [quoting Welf. & Inst. Code, § 602].) "[W]hen the Proposition 47 voters reclassified certain criminal offenses from felonies to misdemeanors, they necessarily reclassified these offenses for juvenile offenders by virtue of Welfare and Institutions Code section 602's correlation of wardship jurisdiction with violations of criminal laws." (*Id.* at p. 1224.) Section 1170.18 "concerns this *very same classification of offenses*, and the statute simply extends the Act's reclassification in retroactive fashion

6

to qualified offenders who incurred their convictions before the Act's effective date." (*Alejandro N.,* at p. 1224.) "Given Welfare and Institutions Code section 602's reliance on the substantive criminal offenses promulgated in the adult context to create juvenile wardship jurisdiction, the statutory schemes as a whole reflect a clear intent to apply section 1170.18's substantive offense reclassification provisions to juvenile offenders." (*Id.* at p. 1225.)  The use of adult criminal language in section 1170.18 did not preclude its application to juvenile proceedings, but instead "logically comports with the fact that the Penal Code and other codes defining crimes define the offenses primarily for use in the adult context, and that these substantive criminal offense provisions are then engrafted onto the juvenile proceedings in wholesale fashion by means of Welfare and Institutions Code section 602." (*Id.* at p. 1225.)

In contrast to *Jovan B.* and *Alejandro N.*, *In re Derrick B., supra,* 39 Cal.4th 535 (*Derrick B.*) held section 290, subdivision (a)(2)(E), authorizing courts, in specified circumstances, to require sex offender registration for unenumerated offenses, did not apply to juvenile proceedings.  (*Id.* at pp. 537, 539 & fn. 4.)  In reaching this conclusion, the court relied in part on statutory language associated with adult criminal proceedings. (*Id.* at p. 540 [" 'Conviction' and 'sentencing' are terms of art usually associated with adult proceedings.  Because the Legislature used these terms, we construe this subdivision as applying only in cases of adult convictions."].)  However, the statutory structure was significant.  Subdivision (a)(2)(A) of section 290 set forth offenses requiring registration for persons " 'convicted' " of those offenses, including one offense if " 'the person is sentenced to state prison.' " (*Id.* at p. 538, fn. 2.)  The provision at issue, subdivision (a)(2)(E), also appeared in subdivision (a) and also included the words " 'conviction' " and " 'sentencing.' " (*Id.* at p. 539, fn. 4.)  Subdivision (d)(3), in contrast, set forth a different list of offenses requiring registration for persons " 'discharged or paroled from the Department of the Youth Authority' " for such offenses. (*Id.* at p. 539, fn. 3.)  The Supreme Court concluded, "the Legislature carefully distinguished, in subdivisions (a)(2)(A) and (d)(3), between the offenses requiring registration by adults and those requiring registration by juveniles.  In the absence of a

clear expression of its intent, we are not persuaded that the Legislature meant to altogether abandon such differentiation in enacting (a)(2)(E)." (*Id.* at p. 546.) Significantly, in contrast to *Jovan B.,* which the court found "clearly distinguishable," this case had "no broader context to expand upon the clear language chosen by the Legislature." (*Derrick B.,* at p. 543.)

Like *Jovan B.* and *Alejandro N.*, and unlike *Derrick B.*, here there is a broader context in which we must consider the applicability of section 17(b)(3) to juvenile proceedings. We begin with the statute itself. "When a fact finder has found the defendant guilty of, or the defendant has pleaded no contest or guilty to, a wobbler that was not charged as a misdemeanor, the procedures set forth in section 17, subdivision (b) . . . govern the court's exercise of discretion to classify the crime as a misdemeanor." (*Park, supra,* 56 Cal.4th at p. 790.) Upon a grant of probation without the imposition of sentence, a wobbler "is '*deemed* a felony' unless subsequently 'reduced to a misdemeanor by the sentencing court' pursuant to section 17, subdivision (b)." (*People v. Feyrer* (2010) 48 Cal.4th 426, 438–439 (*Feyrer*).)[8]

The language contained in section 17(b)(3) was added to the statute in 1963. (*Park, supra,* 56 Cal.4th at p. 793.) Prior to its enactment, if probation was granted for a wobbler offense without imposition of sentence, the offense could only be reduced to a misdemeanor if the court revoked probation and sentenced the defendant to county jail. (*Id.* at p. 792; see also *Meyer v. Superior Court* (1966) 247 Cal.App.2d 133, 139 (*Meyer*) ["the 1963 amendment . . . . makes it possible for the court to reduce a felony to a misdemeanor without the necessity of imposing a jail sentence"].) An opinion issued three years after the enactment concluded, "in conferring upon the court the power to declare an offense to be a misdemeanor after it has suspended imposition of judgment or sentence, the Legislature evidently intended to enable the court to reward a convicted defendant who demonstrates by his conduct that he is rehabilitated." (*Meyer,* at p. 140.)

---

[8] Section 17(b)(3) does not apply if a felony sentence was imposed but execution suspended during the probationary term. (*People v. Wood* (1998) 62 Cal.App.4th 1262, 1267–1268.)

8

Our Supreme Court recently reiterated this purpose of section 17(b)(3) and other statutes authorizing leniency for a defendant who has demonstrated rehabilitation on probation: "These statutes are intended to afford the defendant an opportunity to demonstrate his or her rehabilitation in order to obtain early termination of probation, reclassification of the offense, or dismissal of the action . . . ." (*Feyrer, supra,* 48 Cal.4th at p. 440.)

We turn now to the juvenile law. When the language of section 17(b)(3) was enacted in 1963, "it was unnecessary for the juvenile court to determine whether a so-called 'wobbler' would, in the case of an adult, be a felony or a misdemeanor; it could impose a term of physical confinement without regard to the maximum term of imprisonment for an adult convicted of the same offense." (*In re Manzy W.* (1997) 14 Cal.4th 1199, 1206 (*Manzy W.*).) In 1976, the Legislature enacted "a substantial modification to the juvenile court law. [Citation.] Under the revised law, for the first time, a minor could not be held in physical confinement longer than an adult convicted of the same offense." (*Id.* at p. 1205.) It was these amendments, and a 1977 amendment clarifying the definition of "maximum term of imprisonment" for juvenile law purposes, that our Supreme Court held evidenced an intent to incorporate the DSA into the juvenile court law, to the extent consistent with juvenile law principles. (*Jovan B., supra,* 6 Cal.4th at p. 816.)

The DSA determines the maximum term of imprisonment in felony cases. (*Jovan B., supra,* 6 Cal.4th at pp. 817–818.) "In the case of a so-called 'wobbler,' the length of the [maximum] term [of imprisonment] specified [for a juvenile] would, inevitably, depend on whether the offense was deemed a felony or a misdemeanor." (*Manzy W., supra,* 14 Cal.4th at p. 1205, fn. 3.) Therefore, the 1976 modifications to the juvenile law added the following requirement to Welfare and Institutions Code section 702: "If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony." (Welf. & Inst. Code, § 702; see also *Manzy W.,* at

9

p. 1205.)[9]  "The requirement of a declaration by the juvenile court whether an offense is a felony or misdemeanor was thus directed, in large part, at facilitating the determination of the limits on any present or future commitment to physical confinement for a so-called 'wobbler' offense." (*Manzy W.,* at p. 1206.)

In the context of felony offenses, Welfare and Institutions Code section 726 incorporates the DSA to determine a juvenile's maximum term of confinement. (*Jovan B., supra,* 6 Cal.4th at p. 816.)  In the context of legislatively reclassified offenses, Welfare and Institutions Code section 602 incorporates the substantive reclassifications and any related reclassification procedures. (*Alejandro N., supra,* 238 Cal.App.4th at pp. 1216–1217.)  In the context of wobblers, "the procedures set forth in section 17, subdivision (b) . . . govern the court's exercise of discretion to classify the crime as a misdemeanor." (*Park, supra,* 56 Cal.4th at p. 790.)  We conclude Welfare and Institutions Code sections 702 and 726—requiring a minor's maximum term of confinement be linked to the adult criminal sentencing laws and, in service of this requirement, obligating juvenile courts to declare whether a wobbler is a felony or misdemeanor—evidence an intent to incorporate section 17, subdivision (b), into juvenile court proceedings "except insofar as the focus of a particular [provision] is manifestly at odds with the principles of juvenile law." (*Jovan B., supra,* 6 Cal.4th at p. 813.)

The parties point to other provisions in section 17 involving commitments to the Division of Juvenile Justice.  Section 17, subdivision (b)(2) provides that a wobbler is a misdemeanor for all purposes "[w]hen the court, upon committing the defendant to the Division of Juvenile Justice, designates the offense to be a misdemeanor."  Section 17, subdivision (c) provides: "When a defendant is committed to the Division of Juvenile Justice for a [wobbler offense], the offense shall, upon the discharge of the defendant from the Division of Juvenile Justice, thereafter be deemed a misdemeanor for all

---

[9] This declaration must be made at or before disposition. (Cal. Rules of Court, rule 5.795(a)(1).)

10

purposes."[10]  We need not decide whether these provisions apply only to juveniles prosecuted in criminal court and committed to the Division of Juvenile Justice (see Welf. & Inst. Code, § 1731.5), or whether they also apply to minors committed to the Division of Juvenile Justice following juvenile proceedings, as the parties appear to assume.  In either event, as we will discuss, the provisions support our conclusion.

The People argue the presence of provisions applying to juveniles indicates the Legislature intended the other provisions *not* apply to juveniles.  We disagree.  The provisions of section 17 expressly applying to juveniles involve only those committed to the Division of Juvenile Justice.  It would be incongruous for the Legislature to authorize the reduction of wobblers to encourage rehabilitation for juveniles committed to the Division of Juvenile Justice (either after prosecution in criminal court or not), while not affording a similar mechanism to encourage rehabilitation for juveniles on probation. (See *Alejandro N., supra,* 238 Cal.App.4th at p. 1226 [construing Penal Code statute to apply to juvenile proceedings in part because to do otherwise "creates incongruities that serve no logical purpose"].)  We acknowledge the provisions of section 17 expressly applying to juveniles were amended by a separate bill enacted on the same day as the 1976 juvenile court law amendments.  (Stats. 1976, ch. 1070, § 1, p. 4809 [amending § 17, subd. (b)(2) and enacting § 17, subd. (c)]; Stats. 1976, ch. 1071, pp. 4814–4833 [amending Welf. & Inst. Code].)  We do not consider the Legislature's contemporaneous amendment of section 17, without explicitly indicating an intent to incorporate other relevant aspects of that statute into the juvenile court law, to evidence an intent that the Legislature did not intend such an incorporation.  Welfare and Institutions Code sections 702 and 726 make "a 'general' reference 'to a system or body of laws' " (*Jovan B., supra,* 6 Cal.4th at p. 819)—to wit, criminal provisions relating to the classification and punishment of wobbler offenses.  This obviates the need for each Penal Code provision to

---

**10** This provision has been construed not to apply when the discharge was dishonorable, in light of the provision's underlying "rehabilitative principles."  (*People v. Lassiter* (1988) 202 Cal.App.3d 352, 355–356.)

11

be expressly amended to indicate its applicability to juveniles. (See *ibid.*; *Alejandro N.,* at p. 1225.)

We now turn to whether the application of section 17(b)(3) in juvenile proceedings is consistent with juvenile law principles. (See *Jovan B., supra,* 6 Cal.4th at p. 813.) Section 17(b)(3) serves a rehabilitative purpose by authorizing a court to reduce a wobbler to a misdemeanor if a defendant's conduct on probation demonstrates he or she is rehabilitated. (*Feyrer, supra,* 48 Cal.4th at p. 440 ["The fundamental feature of probation is that good conduct on the part of the probationer may invite mitigation of punishment and (in the case of a wobbler) reclassification of the offense."]; *Meyer, supra,* 247 Cal.App.2d at p. 140 ["in conferring upon the court the power to declare an offense to be a misdemeanor after it has suspended imposition of judgment or sentence, the Legislature evidently intended to enable the court to reward a convicted defendant who demonstrates by his conduct that he is rehabilitated"].) Rehabilitation is one of the primary goals of juvenile delinquency proceedings. (*In re Julian R.* (2009) 47 Cal.4th 487, 496 ["[j]uvenile proceedings continue to be primarily rehabilitative"]; Welf. & Inst. Code, § 202, subd. (b) [noting "rehabilitative objectives of this chapter"].) Application of section 17(b)(3) in juvenile proceedings is consistent with the rehabilitative principles of juvenile law.

In addition, "[f]lexibility is the hallmark of juvenile court law." (*In re Greg F.* (2012) 55 Cal.4th 393, 411.) "The statutory scheme governing juvenile delinquency is designed to give the court 'maximum flexibility to craft suitable orders aimed at rehabilitating the particular ward before it.' " (*Ibid.*; see also Welf. & Inst. Code, § 775 ["Any order made by the court in the case of any person subject to its jurisdiction may at any time be changed, modified, or set aside, as the judge deems meet and proper, subject to such procedural requirements as are imposed by this article."].) Allowing juvenile courts the flexibility of section 17(b)(3) is consistent with this principle.

Finally, the juvenile law requirement that a minor's maximum term of confinement be no longer than that of an adult convicted of the same offense indicates an intent that minors be treated no more harshly than similarly situated adults. (*Jovan B.,*

12

*supra,* 6 Cal.4th at p. 819 ["[t]he obvious purpose of the 1976 and 1977 amendments to Welfare and Institutions Code section 726 was 'to treat adult and juvenile offenders on equal footing as far as the [maximum] duration of their incarceration is concerned' "].) The application of section 17(b)(3) to juvenile proceedings is consistent with this underlying intent. We conclude section 17(b)(3)'s "use of adult procedural terms . . . does not evidence an intent manifestly incompatible with its application to juvenile offenses." (*Jovan B.,* at p. 813.)

The juvenile court's disposition order placing appellant on probation with a nine-month group home term was the "functional equivalent" (*Jovan B., supra,* 6 Cal.4th at p. 815) of a probation grant without imposition of sentence in adult criminal proceedings. In both instances, the court retains jurisdiction and the probationer has the opportunity to demonstrate his or her rehabilitation while on probation. Section 17(b)(3) authorizes the juvenile court, in its discretion, to reduce appellant's battery offense to a misdemeanor.[11] We will remand for the juvenile court to exercise that discretion.

## DISPOSITION

The order denying appellant's motion to reduce his section 243, subdivision (d) offense to a misdemeanor is reversed and the matter is remanded for proceedings not inconsistent with this opinion.

_____
SIMONS, J.

We concur.

_____
JONES, P.J.

_____
BRUINIERS, J.

_____

[11] This conclusion renders it unnecessary for us to decide appellant's equal protection argument.

13

Superior Court of Contra Costa County, No. J13-00091, Hon. John Minney, Judge.

James S. Donnelly, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Donna M. Provenzano and Christina Vom Saal, Deputy Attorneys General, for Plaintiff and Respondent.