Filed 10/19/20  In re M.A. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re M.A., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B299171 (Super. Ct. No. NJ28699) (Los Angeles County) |
| THE PEOPLE, Plaintiff and Respondent, v. M.A., Defendant and Appellant. | |

M.A. appeals a wardship order (Welf. & Inst. Code, § 602) committing him to the Division of Juvenile Justice for a maximum confinement period of 36 years eight months after the trial court sustained a petition for two counts of assault with a firearm (counts 2 & 4; Pen. Code, § 245, subd. (a)(2))[1] and attempted second degree robbery (count 3; §§ 664/211), with firearm enhancements (count 3; § 12022.53, subd. (b); count 2;

---

[1] All statutory references are to the Penal Code unless otherwise stated.

§ 12022.53, subds. (b)-(d); count 4; § 12022.5), great bodily injury enhancements (count 2; § 12022.7, subd. (a)), and gang enhancements (counts 2-4; § 186.22, subd. (b)(1)(C)).  Appellant contends (1) that the pretrial photo identification was unduly suggestive and violated his due process rights, (2) that a firearm enhancement should be stricken on counts 2 and 4, and (3) that the trial court erred in calculating the maximum period of confinement.  The Attorney General agrees that issues 2 and 3 have merit.  We reverse and direct the trial court to strike the firearm enhancement on count 2 (§ 12022.53) and count 4 (§ 12022.5), that it not use the great bodily injury enhancement twice (§ 12022.7, subd. (a)) to calculate the maximum period of confinement on count 2, and that it recalculate the maximum period of confinement.  (Welf.  & Inst. Code, § 726, subd. (d)(3).)  The judgment is otherwise affirmed.

*Facts and Procedural History*

On the evening of July 6, 2017, appellant and three men confronted Brian R. and Antonio R. as they walked by the Anaheim Gardens apartments in Harbor City.  Appellant, an active member of the Harbor City Crips, demanded to know where they were from.  Brian said they were not in a gang.  Appellant kept asking, pulled out a semi-automatic handgun, and pointed it at Brian's throat.  Brian raised his hands and offered his phone, hat, and money.  Appellant shoved Brian against a car with the handgun and held it to Brian's neck.

Antonio told them to leave Brian alone.  The group tried to take Antonio's bike but he fought back.  Appellant shot at Antonio's leg and fired more shots as Antonio and Brian ran.

Brian and Antonio reached the corner and called 911.  Antonio was transported to the hospital for a gun shot to the leg.

2

The police found blood and .380 caliber casings on the sidewalk outside the apartment complex. Brian and Antonio said the shooter had an afro, a mustache and goatee, was skinny with a pointy face and high cheekbones, and wore a dark hoodie and pants and Nike Jordans shoes. The description matched appellant. Los Angeles Police Officer Sterling Byrd stopped appellant (aka Janky) and Harbor City Crips gang member Zeache R. (aka Duda) four hours earlier, trespassing at the apartment complex about 20 feet from where the bullet casings were found. Appellant was wearing a black hoodie, dark jeans, and black Nike shoes that resembled Nike Jordans.

On July 12, 2017, six days after the shooting, Brian was shown a six-pack photo lineup, circled appellant's photo, and said "'No. 1. Looks like the suspect.'" At the adjudication hearing, Brian was asked if appellant was the shooter and said "I think so." Antonio was less sure and could not identify appellant at trial. When Antonio was shown the photo lineup before trial, he said "'that guy looks like the guy that shot me'" but was not 100 percent sure.

Officer Byrd, a gang expert, testified that the Anaheim Gardens apartments is a hangout for the Harbor City Crips, an organized street gang that commits murders, attempted murders, robberies, burglaries, and sells narcotics. Gang members often carry firearms and challenge others by asking where they are from. Officer Byrd stated that appellant was an active Harbor City Crips gang member, had gang tattoos, and performed in music videos promoting the gang. The officer opined that the attempted robbery was for the benefit of the gang to obtain money for guns and drugs, and the shooting was to

3

show the public that the gang would commit acts of violence against anyone who disrespected the gang.

*Photo Lineup Identification*

Appellant argues that the six-pack photo lineup was unduly suggestive and violated his due process rights because his photo is zoomed in and more close up than the other photos. The trial court found that it was not unduly suggestive and that any variance in the photos went to the weight of the identification. We independently review whether the photo lineup identification was unduly suggestive. (*People v. Avila* (2009) 46 Cal.4th 680, 698-699.) "A due process violation occurs only if the identification procedure is 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' [Citation.]" (*People v. Cook* (2007) 40 Cal.4th 1334, 1355.) The burden is on appellant to show the photo lineup was unduly suggestive and the identification was unreliable under the totality of the circumstances. (*People v. Ochoa* (1998) 19 Cal.4th 353, 412 (*Ochoa*).) "The question is whether anything caused defendant to 'stand out' from the others in a way that would suggest the witness should select him. [Citation.]" (*People v. Carpenter* (1997) 15 Cal.4th 312, 367.)

Here the photos are similar and depict men with goatees and mustaches, and slender faces. The men are of similar race, age, and build, have short afro hair and thin faces or high prominent cheekbones. The background in each photo is a different color and appellant's head appears to be slightly larger, but the discrepancies are minor. Brian did not notice any difference in the photos or select appellant's photo because the head was larger. Antonio was shown the six-pack photo lineup, could not make a positive identification, and did not identify

4

appellant at trial. Appellant cross-examined Brian and Antonio about the photo lineup and questioned the officers who conducted the photo identification procedure which was videotaped. The detective who prepared the six-pack photo lineup used booking photos from the police computer system and did not manipulate or Photoshop the photos.

A perfect photo lineup does not exist. "[T]here is no requirement that a defendant in a lineup, either in person or by photo, be surrounded by others nearly identical in appearance. [Citation.] Nor is the validity of a photographic lineup considered unconstitutional . . . where one suspect's photograph is much more distinguishable from the others in the lineup. [Citations.]" (*People v. Brandon* (1995) 32 Cal.App.4th 1033, 1052; see *People v. Carter* (2005) 36 Cal.4th 1114, 1163 [difference in shirt colors, photo boarder, glossy versus semi-glossy photos, background color and image size are trivial immaterial distinctions]; *People v. Johnson* (1992) 3 Cal.4th 1183, 1217 [same; defendant only person depicted in jail clothing not unduly suggestive].)

Assuming, arguendo, that the photo lineup was unduly suggestive, appellant must show the victims' identification was not reliable "'under the totality of the circumstances, taking into account such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation [citation].'" (*Ochoa*, *supra*, 19 Cal.4th at p. 412; see also *Manson v. Brathwaite* (1977) 432 U.S. 98, 114 [listing identification factors].) Brian got a good look at the shooter even though it was dark. They were face-to-face about 20 seconds.

5

Other evidence linked appellant to the shooting and robbery. Officer Byrd stopped appellant and a fellow gang member four hours before the shooting outside the apartment complex. The officer's body camera captured photos of appellant that closely matched the victims' physical description of the shooter. Appellant makes no showing that the photo identification was constitutionally unreliable (*Ochoa*, at p. 412) or that it denied him a fair trial. (*People v. Nguyen* (1994) 23 Cal.App.4th 32, 40.)

Appellant argues that a detective conducted the photo lineup in a suggestive way but the issue was not raised at trial and forfeited. (Evid. Code, § 353; *People v. Cunningham* (2001) 25 Cal.4th 926, 989.) On the merits, the argument lacks merit. Detective Rudy Avelar admonished Brian and Antonio they were under no obligation to identify anyone and the persons responsible for the shooting and attempted robbery may not be in the photo lineup. The photo identifications were in different rooms and videotaped, and there is nothing to indicate that the six-pack photo lineup was assembled or presented in a suggestive way.[2]

---

[2] We have examined the photo lineup (Exhibit Nos. 14-16) and reject the argument that it is unduly suggestive or rendered Brian's in-court identification unreliable. (*Ochoa, supra,* 19 Cal.4th at p. 412.) The photos depict men of the same general age, complexion, build, and appearance. "Minor differences in facial hair among the participants [do] not make the lineup suggestive. [Citation.] Nor [do] differences in background color and image size among the various photographs render the lineup impermissibly suggestive. [Citation.]" (*People v. Johnson* (1992) 3 Cal.4th 1183, 1217.)

*Firearm Use Enhancement – Count 2*

Appellant argues, and the Attorney General agrees, that the trial court erred in finding the firearm enhancement (§ 12022.53) on count 2 (ADW of Brian) was true. The enhancement does not apply because section 12022.53, subdivision (a)(7) limits the enhancement to the armed assault of a peace officer or a firefighter. (§ 245(d); see 3 Witkin & Epstein, Cal. Criminal Law, (4th ed. 2012) Punishment, § 359, p. 552.) We accordingly strike the true finding on the section 12022.53 enhancement on count 2.

Appellant complains that the trial court imposed a 10-year section 12022.53 firearm enhancement on count 2. The trial court said it was adding 10-years based on the section 12022.5 firearm enhancement.[3] The disposition order erroneously states that on count 2, the trial court imposed "12022.53(b)PC = 1 years . . . ." We remand with directions to correct the June 12, 2019 disposition order to reflect that, on count 2, a 10-year section 12022.5 firearm enhancement was imposed. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

Appellant complains that the trial court found all the count 2 enhancements true but did not specifically mention the section 12022.5 firearm enhancement. On count 4 (armed

---

[3] Selecting count 2 as the principal term, the trial court stated: "count 2, the 245(a)(2)[,] that carries a maximum of four years. The 12022.7, great bodily injury allegation, the court is adding 3 years to that principal. The court is also adding the 186.22(b)(1)(C) [gang enhancement], adding 10 years. *The court is adding the 12022.5 special allegation, adding another 10 years.* So as to count 2, the court's calculation is 27 years." (Italics added.)

7

assault on Brian), it found the section 12022.5 allegation was true, then backed up to count 2 and clarified that it was finding the count 2 "special allegations to be true beyond a reasonable doubt," which included both the 12022.5 and 12022.53 firearm enhancements. It did not err. Because the section 12022.5 enhancement is a lesser included enhancement of section 12022.53, a trial court may impose a section 12022.5 enhancement based on a finding that a section 12022.53 enhancement is true. (See *People v. Morrison* (2019) 34 Cal.App.5th 217, 222 [court may impose a "'lesser included'" enhancement when a greater enhancement is found true].)

*Dual Use of GBI Enhancement*

Appellant argues and the Attorney General agrees that the trial court erred in imposing both a 10-year gang enhancement and a three-year great bodily injury (GBI) enhancement on count 2. Appellant's commitment to the Department of Juvenile Justice cannot exceed the maximum term of imprisonment that could be imposed on an adult convicted of the same offense. (Welf. & Inst. Code, § 726, subd. (d)(1); see *In re Eddie M.* (2003) 31 Cal.4th 480, 488 [discussing former Welf. & Inst. Code, §§ 726, subd. (c), 731, subd. (c); *Alejandro N. v. Superior Court* (2015) 238 Cal.App.4th 1209, 1220, disapproved on other grounds in *In re C.B.* (2018) 6 Cal.5th 118, 130.) Where two or more enhancements may be imposed for a GBI on the same victim, on the same offense, only the greater enhancement may be imposed. (§ 1170.1, subd. (g); *People v. Gonzalez* (2009) 178 Cal.App.4th 1325, 1331-1332.)

On count 2, the prosecution elected to use the GBI enhancement (§ 12022.7, subd. (a)) to elevate the armed assault (§ 245, subd. (a)(2)) to a violent felony, which in turn elevated the

8

gang enhancement to 10 years (§ 186.22, subd. (b)(1)(C).)  That is spelled out in the prosecution's sentencing memo which asked the trial court to impose a four-year upper term on count 2 (ADW; § 245(a)(2)), plus 10 years on the gang enhancement, plus 10 years on the firearm enhancement (§ 12022.5, subd. (a)), for a maximum term of 24 years.  The trial court overruled appellant's objection that the GBI enhancement could be used only once and imposed a three-year GBI enhancement for a maximum commitment period of 27 years on count 2.  The court said "[t]here were separate victims involved . . ." but count 2 involved just one victim (Antonio).  Because the 10-year gang enhancement is the greater enhancement, we strike the three-year GBI enhancement and remand with directions to recalculate the maximum period of confinement which, in the trial court's discretion may include consecutive terms from the two prior sustained petitions, filed in 2016.[4]  (Welf. & Inst. Code, § 726, subd. (d)(3); *In re David H.* (2003) 106 Cal.App.4th 1131, 1133-1134.)

*Count 4 - Firearm Enhancement*

Appellant argues, and the Attorney General agrees, that the trial court erred in imposing both a firearm

---

[4] Appellant has prior sustained petitions, one filed on February 1, 2016 for attempted burglary (§§ 664/459), and a second petition filed on June 3, 2016 for two counts of second degree robbery with a gang enhancement (§§ 212.5, subd. (c), 186.22, subd. (b)(1)(C)), and two counts of assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4)) with gang enhancements (§ 186.22, subd. (b)(1)(C)).  We affirmed the judgment on the second petition but modified the disposition order to reflect that the aggregate maximum term of confinement was 20 years.  (*In re M.A.* (Aug. 17, 2017, B277400).)

enhancement (§ 12022.5, subd. (a)) and a gang enhancement (§ 186.22, subd. (b)(1)(C)) in calculating the maximum period of confinement on count 4.  Unlike count 2 (ADW of Antonio), there was no GBI enhancement on count 4 (ADW of Brian) to elevate the armed assault to a violent felony, and then use the ADW violent felony to elevate the gang enhancement to 10 years.  (See *People v. Rodriguez* (2009) 47 Cal.4th 501, 509.)  Appellant, however, was eligible for a 10-year gang enhancement because he "'use[d] a firearm which use [was] charged and proved as provided in . . . Section 12022.5.'  (§ 667.5, subd. (c)(8).)  [The] firearm use resulted in additional punishment not only under section 12022.5's subdivision (a) (providing for additional punishment for personal use of a firearm) but also under section 186.22's subdivision (b)(1)(C), for committing a violent felony as defined in section 667.5, subdivision (c)(8) (by personal use of firearm) to benefit a criminal street gang.  Because the firearm use was punished under two different sentence enhancement provisions, each pertaining to firearm use, section 1170.1's subdivision (f) requires imposition of 'only the greatest of those enhancements' with respect to [count 4]."  (*Ibid*.)  We accordingly strike the one-year-four-month firearm enhancement (§ 12022.5, subd. (a) - one third the four-year enhancement term) and remand to give the trial court the opportunity to restructure its sentencing choices.  (*Ibid*.)

### Disposition

The judgment is reversed with directions to: (1) strike the section 12022.53 firearm enhancement on count 2; (2) strike the section 12022.5 firearm enhancement on section 4; and (3) recalculate the maximum period of confinement.  (Welf. & Inst.

10

Code, § 726, subd. (d)(3).)  In all other respects, the judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

YEGAN, J.

We concur:


GILBERT, P. J.


PERREN, J.

John C. Lawson, II, Judge

Superior Court County of Los Angeles

_____

Mary Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, William H. Shin, Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.