Filed 11/13/25 P. v. Davis CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE, | D083689 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD139968) |
| BAYARD DEVELL DAVIS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, David J. Danielsen, Judge.* Reversed and remanded.

Michelle T. LiVecchi-Raufi, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina, Elizabeth M. Renner, and Christine Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

---

* Retired Judge of the San Diego Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

# I

## INTRODUCTION

In 1999, Bayard Devell Davis was sentenced to state prison for 53 years, eight months to life for committing a troubling series of residential burglaries, assaults, and sex crimes against elderly victims when Davis was 14 years old.

In 2023, Davis filed a petition for recall and resentencing under Penal Code section 1170, subdivision (d).[1]  The trial court denied the petition, finding that Davis did not establish, by a preponderance of the evidence, either of the qualifying circumstances he proffered in support of his request for relief.  Specifically, the court found that Davis failed to establish: (1) he did not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offenses for which the sentence was being considered for recall (§ 1170, subd. (d)(2)(B)); or (2) he had performed acts that tended to indicate rehabilitation or the potential for rehabilitation (*id.*, subd. (d)(2)(D)).

On appeal from the denial order, Davis argues the trial court erred when it found that he did not establish either qualifying circumstance.  We agree with Davis that he adequately demonstrated he did not have prior juvenile felony adjudications for assault or other disqualifying felonies.  On that basis, we are compelled to reverse the order denying his petition for recall and resentencing.

In the trial court, though not on appeal, the parties debated the practical consequences of an order granting a recall.  The People argued against Davis's petition for relief on the basis that a recall would render his sentence nonfinal and entitle him to the retroactive benefits of recent

---

[1]     Further undesignated statutory references are to the Penal Code.

ameliorative criminal laws.  According to the People, these laws would result in Davis's immediate release from custody—without any resentencing or individualized assessment about the suitability of his release—because the trial court and juvenile court both will have lost jurisdiction over Davis after the recall of his sentence.  This issue is not ripe for our consideration, so we will not speculate about the likely outcome of any order granting a recall—except to opine that we, as courts, are obligated to adhere to the resentencing scheme and criminal laws crafted by our Legislature.  If the Legislature shares the People's concerns about these laws, it is incumbent upon the duly-elected members of the Legislature to reconsider, amend, or repeal the laws.

The trial court's denial order is reversed and the matter is remanded for further proceedings under section 1170, subdivision (d).

## II

## BACKGROUND

A. *The Commitment Offenses*[2]

In April 1998, Davis was arrested for violating a curfew law.  After his arrest, law enforcement officers connected him to a series of break-ins, assaults, and sex offenses against elderly victims.  Davis committed the crimes between December 1997 and March 1998, when he was 14 years old. Davis was found unfit for juvenile court and the case was transferred to San Diego Municipal Court, where he was charged as an adult.

The facts giving rise to the charges are as follows:

---

[2]    On appeal, the People requested judicial notice of our court's prior opinion modifying and affirming Davis's judgment of conviction, *People v. Davis* (Oct. 25, 2001, D033892) [nonpub. opn.] (*Davis*).  We previously deferred consideration of the unopposed request and now grant it.  (See Evid. Code, § 452, subd. (d).)  The following summary of the commitment offenses is drawn from that prior opinion.

Count 1:  On December 2, 1997, at about 9:00 or 10:00 p.m., a man living in a fourplex heard a noise, observed a young Black man moving back and forth on the patio of the apartment below his apartment, and called 911. Meanwhile, 73-year old Betty Jo P., who lived alone in the downstairs apartment, was talking on the telephone.  Betty Jo put down the telephone and walked to her bedroom.  She noticed her window was open and there was mud on the window sill and on the side of the wall below the window.

Counts 2, 3, 4, 5, and 6:  On December 7, 1997, at about 7:00 p.m., 92-year-old Geneva W. fell asleep in her living room recliner in the apartment where she lived alone.  When she awoke, she observed a young Black man sleeping under the raised footrest of her recliner.  She screamed and the young man threatened her, lifted up her nightgown and robe with a knife, and tried to push her legs up and apart.  Geneva continued yelling and the young man threatened her again, pulled off her underwear, pulled her to the floor, and unsuccessfully tried to penetrate her vagina with his penis. The young man then pushed, shoved, and lifted Geneva back into the chair and again tried to sexually penetrate her.  As Geneva screamed and fought, the man pulled her back onto the floor yet again, rubbed his penis against her inner thigh, and unsuccessfully tried to penetrate her vagina.  The man then pulled Geneva back into her recliner and rubbed his penis against her rectum.  The man put his clothes back on, dialed 911, handed the phone to Geneva, apologized to her, and left the apartment through a kitchen window.

Count 7:  On December 9, 1997, at about 7:30 or 8:00 p.m., J.Y. and his wife were watching television in J.Y.'s living room at a senior citizen building.  J.Y. had left his bedroom door open and noticed it had been closed, so he went over to investigate and heard a click as if someone had locked the door.  J.Y. armed himself with a knife, opened the door, and saw no one

4

inside the bedroom.  Law enforcement obtained fingerprints from a balcony outside the bedroom, which were later matched with Davis's fingerprints.

Counts 8, 9, 10, and 11:  On March 28, 1998, at about 9:45 p.m., 88-year-old Sadie P. was at home alone and reading in her dining room.  A young Black man snuck up on her from her side, grabbed her arm and pulled it over her shoulder, and covered her eyes with his other hand.  The man threatened her with a knife and directed her to the bedroom, where he got on the bed and removed her robe, bra, and underwear.  Sadie kicked the young man off the bed, injuring herself in the process.  The young man remained at the foot of the bed for about 10 minutes before he apologized and left.

On April 14, 1999, Davis pleaded guilty to four counts of residential burglary (§§ 459, 460; counts 1, 3, 7, & 9), with special allegations that each victim was 65 years of age or older (§ 667.9, subd. (a)); one count of forcible rape (§ 261, subd. (a)(2); count 2), with special allegations that he used a deadly weapon in the commission of the offense (§ 12022.3, subd. (a)), he personally inflicted great bodily injury upon a person 70 years of age or older (§ 12022.7, subd. (c)), and the offense was committed during a burglary with the use of a deadly weapon (§ 667.71, subds. (a), (c)); one count of forcible sodomy (§ 286, subd. (c); count 4), with special allegations that he personally inflicted great bodily injury upon a person 70 years of age or older (§ 12022.7, subd. (c)) and the victim was 65 years of age or older (§ 667.9, subd. (a)); two counts of assault with a deadly weapon by means of force likely to produce great bodily injury (§ 245, subd. (a)(1); counts 5 & 11), with special allegations that he used a deadly weapon (§ 1192.7, subd. (c)) and, for count 5, he personally inflicted great bodily injury upon a person 70 years of age or older (§ 12022.7, subd. (c)); two counts of willful cruelty to an elder

likely to produce great bodily injury or death (§ 368, subd. (a); counts 6 & 10); and one count of assault with intent to commit a felony (§ 220; count 8).

The trial court sentenced Davis to prison for 53 years, eight months to life. On appeal, our court affirmed the judgment of conviction in all material respects. (*Davis, supra*, D033892.)

B. *Recall and Resentencing Proceedings*

On October 23, 2023, Davis petitioned for a recall of his sentence and resentencing under section 1170, subdivision (d). In his petition, he alleged he satisfied the statutory criteria for a recall of his sentence—(1) he was under 18 years of age when he perpetrated the commitment offenses; (2) he was sentenced to the equivalent of life without the possibility of parole (LWOP); (3) he had been incarcerated for at least 15 years; (4) he was remorseful for his crimes and had worked towards rehabilitation; and (5) at least one of four qualifying circumstances was satisfied.

Specifically, Davis alleged two separate circumstances merited a recall—(1) he did not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offenses for which the sentence was being considered for recall (§ 1170, subd. (d)(2)(B)); and (2) he had performed acts that tended to indicate rehabilitation or the potential for rehabilitation (*id.*, subd. (d)(2)(D)). In support of his contention that he had performed acts evidencing rehabilitation, Davis attached certificates, reports, and other records documenting his completion of vocational education courses (for subjects including typing, proofreading, shop safety, office machine repair, fiber optics, and customer service), documents showing he passed General Education Development (GED) tests and obtained his high school equivalency

6

certificate, and records indicating he participated in mental health counseling in prison.

The District Attorney for the County of San Diego opposed the petition for recall and resentencing on a number of grounds. The District Attorney's primary argument was that Davis was not entitled to relief because his prison sentence of 53 years, 8 months to life was not the functional equivalent of LWOP. The District Attorney also asserted Davis could not establish the qualifying circumstances referenced in his petition for recall and resentencing.

With respect to the first circumstance, the District Attorney argued that Davis suffered a juvenile felony adjudication in 1997 for assault with a deadly weapon or force likely to cause great bodily injury in violation of former section 245, subdivision (a)(1). In support of this assertion, the District Attorney cited a probation report that was prepared by the County of San Diego Probation Department and filed with the trial court on May 20, 1999, in connection with the sentencing proceedings for Davis's commitment crimes.[3] The probation report indicates Davis was charged in 1997, as a juvenile, with three counts—violations of former section 245, subdivision (a)(1) (count 1) and section 148 (count 2) arising out of an incident on September 6, 1997, and a violation of sections 484 and 488

---

[3]    Both parties tried to obtain Davis's juvenile delinquency records. However, the records were destroyed due to their age.

7

(count 3) arising out of an incident on May 21, 1997.[4]  According to the probation report, there was a "True Finding on Count 1, reduced to misd[emeanor] per [Penal Code] 17(b)(4), [Counts] 2 & 3 dismissed with a Harvey Waiver; Ward placed in his own home with 50 hours of community service work and a $75 fine."[5]

Alternatively, the District Attorney argued the commitment offenses themselves precluded Davis from satisfying the first qualifying circumstance. The prosecution used a single consolidated information to charge all of the commitment offenses and Davis pleaded guilty to all of the commitment offenses, as an adult, on the same date—April 14, 1999.  Nevertheless, the District Attorney argued the serial nature of the commitment offenses, which were perpetrated on different dates, illustrated he was not the kind of "first-time offender" to which the Legislature intended to extend relief under section 1170, subdivision (d)(2)(B).

With respect to the second qualifying circumstance, the District Attorney claimed Davis had not performed acts tending to show rehabilitation or the possibility of rehabilitation.  The District Attorney acknowledged Davis had completed vocational classes and programs while in prison, but argued the acts and programs were not sufficiently related to the

---

4    The probation report describes the incident from September 6, 1997, as follows: "[A]t approximately 10:15 a.m., the defendant and another juvenile were shooting BB-guns at a handicapped parking sign near the welfare office in El Cajon.  Officers who responded to the scene reported that the defendant was slow to comply with their orders to drop the gun and sit on the ground. An officer had to use force to get the defendant to sit on the ground."

5    "A *Harvey* waiver permits the sentencing court to consider the facts underlying dismissed counts and enhancements when determining the appropriate disposition for the offense or offenses of which the defendant stands convicted." (*People v. Munoz* (2007) 155 Cal.App.4th 160, 167.)

criminal conduct giving rise to his incarceration. The District Attorney also noted that Davis had received 41 rules violation reports (RVRs) for indecent exposure since 2014, one RVR for disorderly conduct in 2014, one RVR for sexual conduct in 2021, and two RVRs for battery on a non-inmate in 2019 and 2021, and he was criminally convicted of indecent exposure in 2022. These recurring incidents of indecent exposure even resulted in Davis being sent to a special housing unit multiple times as a disciplinary measure. The District Attorney asserted Davis's "repeated rules violations and [] new sexual offense criminal conviction" showed he was not rehabilitated and did not have a potential for rehabilitation.

Davis filed a supplemental reply in support of his petition. With regard to the first qualifying circumstance, Davis claimed the 1997 assault charge for which the juvenile court made a true finding was a misdemeanor, not a felony. In support of this assertion, Davis referenced the same probation report relied on by the District Attorney, which indicated that the charge had been reduced to a misdemeanor under section 17, subdivision (b)(4). Davis also cited a sentencing memorandum filed by the District Attorney in connection with Davis's sentencing, which stated, "The first record of the defendant committing a crime was in 1997 when he admitted, in juvenile court, a violation of Penal Code section 245(a)(1), Assault with a Deadly Weapon as a misdemeanor per Penal Code section 17(b)."

Further, Davis argued he satisfied the second qualifying circumstance because, under section 1170, subdivision (d)(2)(D), he merely needed to show he had performed *acts* that tended to indicate rehabilitation or the potential for rehabilitation to obtain a recall of his sentence—not that he had been rehabilitated or had the potential to be rehabilitated. Davis argued his many

9

RVRs would only be relevant, if at all, at the resentencing hearing after the recall of his sentence.[6]

The trial court held a hearing on Davis's petition for recall and resentencing. After the parties presented their arguments, the court found Davis was under the age of 18 at the time of the offenses, he had been incarcerated for at least 15 years, and he had filed a statement describing his remorse and work towards rehabilitation. The court also found Davis was serving a sentence that was the functional equivalent of LWOP. However, the court found Davis did not prove either of the qualifying circumstances he had proffered under section 1170, subdivision (d)(2).

Specifically, the court found the record was "ambiguous" as to whether Davis was adjudicated in 1997, as a juvenile, for a felony assault charge or, alternatively, for a misdemeanor assault charge. In rendering this finding, the court opined that it was "not convinced by the Deputy District Attorney's characterization in the sentencing brief that, in fact, this represent[ed] a plea to a misdemeanor."

Alternatively, the court found that Davis did not establish the qualifying circumstance because, although he was *sentenced* for all of the commitment offenses on the same date, he *perpetrated* the crimes on different dates. According to the court, the first crime Davis committed in his crime

---

[6]     When a court decides whether to resentence a defendant to LWOP, the court may consider, among other factors, the fact that "[t]he defendant has had no disciplinary actions for violent activities in the last five years in which the defendant was determined to be the aggressor." (§ 1170, subd. (d)(6)(H).) It may also consider whether "[t]he defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation, including, but not limited to, availing themselves of rehabilitative, educational, or vocational programs, if those programs have been available at their classification level and facility, using self-study for self-improvement, or showing evidence of remorse." (*Id.*, subd. (d)(6)(F).)

10

spree—the residential burglary on December 2, 1997—constituted a prior disqualifying offense under section 1170, subdivision (d)(2)(B).

The court also found that Davis did not establish he had performed acts tending to indicate rehabilitation or the potential for rehabilitation. The court praised Davis for his vocational education achievements and GED results, but found these acts had "nothing to do with" the issues Davis needed to address when considered in the context of the sex crimes he perpetrated. The court noted that Davis submitted "evidence of participation [in] mental health counseling" in prison, but opined "there [was] nothing to suggest what the nature of those counseling sessions [were] supposed to address."

Based on these findings, the court denied the petition for recall and resentencing. Davis timely appealed the order denying his petition.

III

DISCUSSION

Davis challenges the trial court's finding that he failed to establish at least one qualifying circumstance entitling him to a recall of his sentence under section 1170, subdivision (d). In particular, he claims the court erred when it found that he failed to establish: (1) he did not have a prior juvenile felony adjudication for assault or another disqualifying felony (§ 1170, subd. (d)(2)(B)); or (2) he had performed acts that tended to indicate rehabilitation or the potential for rehabilitation (*id.*, subd. (d)(2)(D)).

We agree with Davis's first argument. Our conclusion compels us to reverse the trial court's denial order and renders it unnecessary for us to address Davis's second argument.

A. *Legal Standards*

In *Graham v. Florida* (2010) 560 U.S. 48, the U.S. Supreme Court held that the Eighth Amendment's ban against cruel and unusual punishments

11

does not permit the imposition of a sentence of LWOP for a juvenile offender convicted of a nonhomicide crime. In the wake of *Graham*, the California Legislature approved Senate Bill No. 9 (2011–2012 Reg. Sess.), which added subdivision (d)(2) to section 1170, effective January 1, 2013, and created a procedure for a juvenile offender sentenced to LWOP to petition for a recall of the offender's sentence and resentencing after the offender has served at least 15 years of the sentence.[7] (*In re Kirchner* (2017) 2 Cal.5th 1040, 1049 (*Kirchner*) [Senate Bill No. 9 "was inspired by concerns regarding sentences of life without parole for juvenile offenders"]; see also, e.g., Assem. Com. on Public Safety, Analysis of Sen. Bill No. 9 (2011–2012 Reg. Sess.) as amended May 27, 2011, pp. 9–11.)

Subject to exceptions not relevant here, section 1170, subdivision (d)(1), in its present form, states, "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing." (§ 1170, subd. (d)(1).)

By its terms, the statute creates a resentencing mechanism for juvenile offenders who are subject to explicitly-designated LWOP sentences. (*People v. Heard* (2022) 83 Cal.App.5th 608, 622–626 (*Heard*).) However, several courts—including our own—have held that it violates the constitutional promise of equal protection of the laws to deny relief under the statute to juvenile offenders sentenced to lengthy terms of years amounting to the functional equivalent of LWOP. (*Id.*, at pp. 626–634; *People v. Sorto* (2024) 104 Cal.App.5th 435, 450–454; *People v. Bagsby* (2024) 106 Cal.App.5th 1040,

---

7      Effective January 1, 2022, section 1170, subdivision (d)(2) was renumbered as subdivision (d)(1). (Stats. 2021, ch. 731, § 1.3.)

12

1054–1061 (*Bagsby*); accord *People v. Cabrera* (2025) 111 Cal.App.5th 650, 653; but see *People v. Ortega* (2025) 111 Cal.App.5th 1252, 1260 [availability of section 3051 youth offender parole hearing "moots a juvenile defendant's constitutional claim that he is serving a sentence that is the functional equivalent of LWOP"]; *People v. Isayev* (2025) 113 Cal.App.5th 1117, 1123 [youth offender parole hearing eligibility means defendant is no longer serving LWOP or functional equivalent].)  Based on this precedent, juvenile offenders sentenced to the functional equivalent of LWOP routinely seek— and obtain—relief under section 1170, subdivision (d).  (See *Bagsby*, at p. 1068; see also *Cabrera,* at pp. 653–654 [reversing denial of resentencing petition for juvenile sentenced to functional equivalent of LWOP]; accord *Sorto*, at p. 449 ["section 1170(d) plainly has the potential to grant meaningful relief to functionally equivalent LWOP offenders"].)

Section 1170, subdivision (d)(2), sets forth the procedural requirements and required content of a petition for recall and resentencing.  The defendant must file the petition with the sentencing court.  (§ 1170, subd. (d)(2).)  The petition must include:  (1) a "statement that the defendant was under 18 years of age at the time of the crime and was sentenced to life in prison without the possibility of parole," (2) a "statement describing [the defendant's] remorse and work towards rehabilitation," and (3) a "statement that one" or more of four qualifying circumstances is true.  (*Ibid.*)  Two of those four qualifying circumstances are relevant to the present case.

The first applicable qualifying circumstance exists when "[t]he defendant does not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence is being considered for recall."  (§ 1170, subd. (d)(2)(B).)  The second relevant qualifying circumstance occurs when

"[t]he defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation, including, but not limited to, availing themselves of rehabilitative, educational, or vocational programs, if those programs have been available at their classification level and facility, using self-study for self-improvement, or showing evidence of remorse." (*Id.*, subd. (d)(2)(D).)

"If the court finds by a preponderance of the evidence that one or more of the qualifying circumstances in the petition are true, the court must recall the defendant's sentence and hold a hearing to resentence the defendant." (*Kirchner, supra*, 2 Cal.5th at p. 1049; see § 1170, subd. (d)(7).) At the hearing, the court may consider various factors enumerated in section 1170, subdivision (d)(6) and (8), and "any other criteria that the court deems relevant to its decision," (§ 1170, subd. (d)(11)). The court "shall have the discretion to resentence the defendant in the same manner as if the defendant had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (*Id.* subd. (d)(7).) If the court does not recall the sentence, or if it resentences the defendant to LWOP, the defendant can file additional petitions for relief at the twentieth, twenty-fourth, and twenty-fifth years of incarceration. (*Id.*, subd. (d)(10).)

We apply the substantial evidence standard of review when considering disputed findings of fact made by trial courts. (*People v. Munoz* (2025) 110 Cal.App.5th 499, 506–507 (*Munoz*); *People v. Harring* (2021) 69 Cal.App.5th 483, 495 (*Harring*).) Under that standard of review, "we review the record in the light most favorable to the order to determine whether the order is supported by substantial evidence." (*People v. James* (1985) 176 Cal.App.3d 795, 798.) "Substantial evidence is evidence that is 'of ponderable legal significance,' 'reasonable in nature, credible, and of solid value,' and

14

' "substantial" proof of the essentials which the law requires in a particular case.' " (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1006.)

Insofar as Davis's claims require us to interpret section 1170, subdivision (d), they present questions of statutory construction subject to de novo review. (*Munoz, supra*, 110 Cal.App.5th at p. 506; *Harring, supra*, 69 Cal.App.5th at p. 495.) " 'Statutory construction begins with the plain, commonsense meaning of the words in the statute, " 'because it is generally the most reliable indicator of legislative intent and purpose.' " ' [Citation.] A statute is not to be read in isolation, but construed in context and ' "with reference to the whole system of law of which it is a part so that all may be harmonized and have effect." ' [Citation.] ' "If there is no ambiguity or uncertainty in the language, the Legislature is presumed to have meant what it said, and we need not resort to legislative history to determine the statute's true meaning." ' " (*Heard, supra*, 83 Cal.App.5th at pp. 622–623.)

B. *The Trial Court Erred When It Found That Davis Failed to Establish That He Had No Prior Juvenile Felony Assault Adjudications*

The trial court denied Davis's petition for recall and resentencing based, in part, on the court's finding that he failed to satisfy his burden under section 1170, subdivision (d)(2)(B). Under that provision, Davis was required to establish, by a preponderance of the evidence, that he did "not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense[s] for which the sentence [was] being considered for recall." (*Ibid.*)

We conclude substantial evidence does not support this finding. The only relevant evidence proffered by the parties consisted of the probation report and the prosecution's sentencing memorandum, both of which were prepared and filed with the trial court in preparation for the sentencing hearing for Davis's commitment crimes. According to the probation report,

15

Davis's juvenile file disclosed that a true finding was made in 1997 on a charge alleging a violation of former section 245, subdivision (a)(1). The sentencing memorandum states that Davis "admitted, in juvenile court, a violation of [former] Penal Code section 245(a)(1)."

The version of section 245, subdivision (a)(1), that was in effect in 1997 stated, "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment." (Former § 245, subd. (a)(1).)

"The Legislature has classified most crimes as *either* a felony or a misdemeanor, by explicitly labeling the crime as such, or by the punishment prescribed. 'A felony is a crime that is punishable with death, [or] by imprisonment in the state prison .... Every other crime or public offense is a misdemeanor except those offenses that are classified as infractions.' (§ 17, subd. (a).) There is, however, a special class of crimes involving conduct that varies widely in its level of seriousness. Such crimes, commonly referred to as 'wobbler[s]' [citation], are chargeable or, in the discretion of the court, punishable as either a felony *or* a misdemeanor; that is, they are punishable either by a term in state prison or by imprisonment in county jail and/or by a fine." (*People v. Park* (2013) 56 Cal.4th 782, 789 (*Park*).) Because a violation of former section 245, subdivision (a)(1), was punishable "by imprisonment in the state prison for two, three, or four years," or alternatively, by a monetary fine and/or incarceration "in a county jail for not exceeding one year," the offense was a wobbler. (Former § 245, subd. (a)(1).)

16

If the appellate record disclosed nothing more than the mere fact that Davis admitted a violation of former section 245, subdivision (a)(1), perhaps we could affirm the trial court's finding based on the fact that such a violation was potentially chargeable and/or punishable as a felony, and Davis—as the petitioner seeking relief—shouldered the burden of demonstrating that he did not have a prior juvenile felony adjudication for assault. However, that is *not* the only evidence contained in the record. The probation report *also* indicates that the assault charge was reduced to a misdemeanor under section 17, subdivision (b)(4).[8]

Section 17, subdivision (b)(4) provides, in relevant part, that "[w]hen a crime is punishable, in the discretion of the court, either by imprisonment in the state prison or imprisonment in a county jail under the provisions of subdivision (h) of Section 1170, or by fine or imprisonment in the county jail, *it is a misdemeanor for all purposes* under the following circumstances: [¶] … (4) When the prosecuting attorney files in a court having jurisdiction over misdemeanor offenses a complaint specifying that the offense is a misdemeanor." (Italics added.)[9]

Section 17, subdivision (b)(4), grants "discretion [to] the prosecuting attorney" to charge a wobbler as a misdemeanor. (*People v. Superior Court* (*Mitchell*) (2024) 17 Cal.5th 228, 242; see *Necochea v. Superior Court* (1972) 23 Cal.App.3d 1012, 1016 [section 17, subdivision (b)(4) "vest[s the] district

---

[8]     Similarly, the sentencing memorandum indicates the charge was reduced to a misdemeanor under section 17, without specifying the subdivision of section 17 authorizing the reduction of the charge.

[9]     Courts have applied section 17 in juvenile proceedings, even though it "uses language that is generally not applicable to juvenile proceedings–specifically, 'defendant' …." (*In re E.G.* (2016) 6 Cal.App.5th 871, 876.)

attorney with the right to extend more lenient treatment to an offender"].) Its purpose is "to benefit the offender and to encourage misdemeanor filings where such appear to be warranted." (*Necochea*, at pp. 1015–1016; see *County of Los Angeles v. Civil Service Com.* (1995) 39 Cal.App.4th 620, 631 ["The purpose of this provision is 'to permit the selection of offenders who merit more lenient treatment, to encourage guilty pleas by limiting the potential penalty and to save court time and expense.' "].) Thus, the probation report incontrovertibly reveals that Davis was adjudicated for a violation of former section 245, subdivision (a)(1), which was reduced to a misdemeanor for all purposes.

On appeal, the People admit Davis's assault charge "appears" to have been "reduced to a misdemeanor" under section 17, but they suggest the trial court was nonetheless correct to deny Davis's petition for relief because he might have admitted a felony assault charge in 1997—i.e., he might have been adjudicated for a felony charge—before the charge was later reduced from a felony to a misdemeanor. As noted, a defendant is entitled to a recall (assuming all other statutory requirements are satisfied) if the defendant "does not have juvenile felony *adjudications* for assault" or other disqualifying felonies. (§ 1170, subd. (d)(2)(B), italics added.) We are not persuaded by the People's argument.

As a preliminary matter, the only evidence bearing on this issue refutes the People's claim. In the sentencing memorandum prepared in connection with the sentencing hearing for the commitment crimes, the District Attorney unambiguously stated that Davis "*admitted*, in juvenile court, *a violation of Penal Code section 245(a)(1)*, Assault with a Deadly Weapon *as a misdemeanor* per Penal Code section 17(b)." (Italics added.) The only reasonable interpretation of this statement is that Davis admitted a

misdemeanor violation of former section 245, subdivision (a)(1)—not that he admitted (i.e., was adjudicated for) a felony charge, which was later reduced to a misdemeanor. In fact, there is no evidence in the record—let alone substantial evidence—affirmatively showing or tending to show that Davis admitted a felony charge that was subsequently reduced to a misdemeanor.

Even if we were to accept the People's speculative claim for the sake of argument, the outcome would remain the same. If Davis had admitted a felony violation of former section 245, subdivision (a)(1), which was later reduced to a misdemeanor violation at his disposition hearing or at some point thereafter, the assault charge would have become a misdemeanor "for all purposes" from the moment of the reduction onwards. (§ 17, subd. (b); see *In re C.H.* (2016) 2 Cal.App.5th 1139, 1146 [" '[W]hen a wobbler is reduced to a misdemeanor [under section 17], the offense *thereafter* is deemed a "misdemeanor for all purposes …." ' [Citations.] Put differently, redesignation under section 17 makes the wobbler 'a misdemeanor from that point on.' "].)

Section 17, subdivision (b) "has been construed in accordance with its plain language to mean that the offense is a misdemeanor *'for all purposes.'* " (*Park, supra*, 56 Cal.4th at p. 793, italics added.) For example, "reviewing courts have long recognized that reduction of a wobbler to a misdemeanor under what is now section 17(b) generally precludes its use as a prior felony conviction in a subsequent prosecution." (*Id.* at p. 794; see, e.g., *id.* at pp. 794–804 [defendant guilty of wobbler charged as felony and reduced to misdemeanor under section 17, subd. (b)(3), cannot be subject to prior serious felony conviction enhancement under section 667, subd. (a)]; *People v. Camarillo* (2000) 84 Cal.App.4th 1386, 1389–1394 [felony conviction for wobbler offense later reduced to misdemeanor under section 17 could not be

19

used as prior felony conviction to aggravate subsequent conviction]; accord *People v. Hannon* (1971) 5 Cal.3d 330, 332–340 [juvenile committed to the Youth Authority and returned to court for misbehavior could not be sentenced to prison because section 17 made his wobbler a misdemeanor "for all purposes" when he was committed to the Youth Authority].)

Applying these same principles here, we conclude that Davis's admission—even if it was an admission to a felony charge at the time—must be considered an admission to a misdemeanor charge for all purposes from the point at which the charge was reduced to a misdemeanor—unless, that is, the Legislature "made clear its intent to treat a wobbler as a felony" for purposes of section 1170, subdivision (d), "notwithstanding [the prosecutor's] exercise of [its] discretion to reduce the offense to a misdemeanor" under section 17. (*Park, supra*, 56 Cal.4th at p. 794; see, e.g., § 17, subd. (e) [section 17 "does not authorize a judge to relieve a defendant of the duty to register as a sex offender" if the defendant is found guilty of a crime requiring sex offender registration]; *People v. Feyrer* (2010) 48 Cal.4th 426, 442, fn. 8 [under the Three Strikes Law, a wobbler reduced to a misdemeanor under section 17, subd. (b)(3) after a court suspends the imposition of a sentence can serve as a strike if the defendant suffers a subsequent felony conviction].)

We discern no legislative intent to override section 17, subdivision (b), either in the text of section 17, or in the text of section 1170, subdivision (d). We have also reviewed the legislative history of Senate Bill No. 9, which created the recall-and-resentencing framework at issue here. Like the text of the statutes themselves, these legislative materials do not evince a legislative intent to supersede section 17. Tellingly, the People do not even argue that the Legislature intended to preclude relief under section 1170, subdivision (d)(2)(B), in circumstances like this one, where a prior juvenile

20

adjudication involving a felony charge has been reduced to a juvenile adjudication involving a misdemeanor charge pursuant to section 17, subdivision (b)(4).

In short, *all* of the evidence in the record shows that Davis's 1997 juvenile adjudication for violating former section 245, subdivision (a)(1), was reduced from a felony charge to a misdemeanor charge under section 17, subdivision (b). The only evidence disclosing *when* that reduction took place (the prosecution's sentencing memorandum) reveals the reduction took place at or before Davis's admission to the charge, a clear indication that Davis was never adjudicated for a felony charge in the first place. But, regardless of when the reduction took place, the reduction meant the charge was a misdemeanor "for all purposes" thereafter, including when Davis requested a recall of his sentence under section 1170, subdivision (d), more than two decades after the reduction of his juvenile charge. For these reasons, we conclude Davis met his burden of showing that he did "not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence [was] being considered for recall." (§ 1170, subd. (d)(2)(B).)[10]

Because a defendant need only demonstrate one qualifying circumstance in section 1170, subdivision (d)(2), it is unnecessary for us to

---

[10]    The trial court also found that Davis was unable to satisfy his burden under section 1170, subdivision (d)(2)(B), based on his conviction for the residential burglary that occurred on December 2, 1997. The People have wisely refrained from defending this erroneous ruling on appeal. Davis did not have a juvenile adjudication for residential burglary "prior to the offense[s]" for which he now seeks a recall. (§ 1170, subd. (d)(2)(B).) Instead, he pleaded guilty to the residential burglary charge in adult criminal court on April 14, 1999, more than a year after he perpetrated the commitment offenses for which he is seeking a recall.

determine whether Davis also established that he "performed acts that tend to indicate rehabilitation or the potential for rehabilitation" under section 1170, subdivision (d)(2)(D).  Given the trial court's finding that Davis satisfied all of the other criteria warranting a recall of his sentence, our conclusion that Davis carried his burden under section 1170, subdivision (d)(2)(B), compels us to reverse the order denying his petition for a recall.

C. *Proceedings on Remand*

As noted at the outset of the opinion, the People urged the trial court to deny Davis's petition, among other reasons, based on their assumption that a recall of his sentence would result in his immediate release from custody.

According to the People, an order finding that Davis satisfied one of the qualifying circumstances in section 1170, subdivision (d)(2), would require the trial court to "recall the sentence and commitment previously ordered." (§ 1170, subd. (d)(5).)  A recall of Davis's sentence would, in turn, render his judgment nonfinal.  (See *Bagsby, supra*, 106 Cal.App.5th at pp. 1064–1065; *People v. Montes* (2021) 70 Cal.App.5th 35, 47.)  Because Davis's judgment would no longer be final, he would become entitled to the benefits of various ameliorative criminal laws that were enacted after the date of his original sentencing under the rule set forth in *In re Estrada* (1965) 63 Cal.2d 740.  (See *Bagsby*, at pp. 1065–1067; *Montes*, at pp. 47–48.)

Such ameliorative laws include Proposition 57 and Senate Bill No. 1391 (2017–2018 Reg. Sess.).  Proposition 57, enacted by California voters in 2016, abolished the then-existing rule permitting prosecutors to directly file charges against minors 14 years or older in criminal court rather than juvenile court.  (*O.G. v. Superior Court* (2021) 11 Cal.5th 82, 88–89 (*O.G.*).)  "For 14 and 15 year olds, prosecutors could seek transfer to criminal court

22

only for specified serious or violent offenses." (*Id.* at p. 89.) Then, in 2018, the Legislature enacted Senate Bill No. 1391, effective January 1, 2019, which "amended Proposition 57 by eliminating the transfer of juveniles accused of committing crimes when they are 14 or 15 years old, unless they are first apprehended after the end of juvenile court jurisdiction." (*O.G.,* at p. 89.)

Under the People's line of reasoning, these ameliorative laws would deprive the trial court of jurisdiction to resentence Davis after a recall of his sentence due to the fact that he perpetrated the commitment crimes when he was 14 years old and he was apprehended before the end of juvenile court jurisdiction. The juvenile court also would not have jurisdiction over Davis because he is forty-two years old. (See *Bagsby, supra*, 106 Cal.App.5th at p. 1053, fn. 6 [observing that Welfare & Institutions Code section 607 authorizes the juvenile court to retain jurisdiction over persons up to the age limits of 21, 23, and 25].) Thus, the People argued, the practical consequence of an order recalling Davis's sentence would not be a typical resentencing hearing during which the trial court could consider the resentencing factors set forth in section 1170, subdivision (d)(6), (8), or (11); instead, Davis would be automatically and immediately released from custody.

It is premature for us to speculate about the arguments the parties may present on remand, the orders the trial court may issue in response to those arguments, and the circumstances that may exist, if any, permitting

the juvenile court to exercise or retain jurisdiction over Davis.[11]  But, even if the issue were ripe for our consideration, it is not this court's place to opine about the desirability of the legislatively-enacted recall-and-resentencing proceeding, as applied to Davis.  (See *People v. Hardin* (2024) 15 Cal.5th 834, 864 ["It is not for us to pass judgment on the wisdom or desirability of [the Legislature's] policy choices."]; *People v. Sipe* (1995) 36 Cal.App.4th 468, 483 ["Whether the law is 'wise' is a matter of public policy for the Legislature, not the courts."].)  Suffice it to say, if the Legislature harbors the same public safety fears that the People have expressed to the trial court, it is the Legislature—not the courts—that possess the constitutional authority to rewrite or repeal the statutes giving rise to these concerns.

---

[11]  In limited circumstances, the juvenile court can extend its jurisdiction over a juvenile offender past the age of 25.  For example, Welfare and Institutions Code section 1800 "permits the prosecutor to petition for an extension of juvenile court jurisdiction, even past the age of 25, if discharging a juvenile offender 'would be physically dangerous to the public because of the person's mental or physical deficiency, disorder, or abnormality that causes the person to have serious difficulty controlling his or her dangerous behavior.' " (*O.G., supra*, 11 Cal.5th at p. 93; see *People v. Hwang* (2021) 60 Cal.App.5th 358, 366, fn. 6 [recall-and-resentencing order under section 1170, subdivision (d), which provided ameliorative benefits of Proposition 57 to defendant who committed crimes when he was 15 years old, did not necessarily "require defendant's *automatic* release from custody"].)

IV

DISPOSITION

The order denying Davis's petition for a recall and resentencing is reversed and the matter is remanded for further proceedings under Penal Code section 1170, subdivision (d).

McCONNELL, P. J.

WE CONCUR:

KELETY, J.

RUBIN, J.